STATE OF CONNECTICUT *v.* JOSE VARGAS
(11628)

O'CONNELL, FOTI and FREEDMAN, Js.

Argued March 21—decision released May 24, 1994

*Kent Drager,* assistant public defender, for the appellant (defendant).

*Mary H. Lesser,* assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, *Paul E. Murray,* assistant state's attorney, and *James Somers,* law student intern, for the appellee (state).

FREEDMAN, J. The defendant appeals from the judgment of conviction, rendered after a plea of nolo contendere made pursuant to General Statutes § 54-94a,[1] of a charge of possession of narcotics with the intent to sell by a person who is not drug-dependent in viola-

---

[1] General Statutes § 54-94a provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure, motion to suppress statements and evidence based on the involuntariness of a statement or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

tion of General Statutes § 21a-278 (b). The defendant filed a motion to suppress evidence. After an evidentiary hearing,[2] the trial court denied the defendant's motion to suppress. Thereafter, the defendant elected to enter a plea of nolo contendere, conditioned on his right to appeal the denial of his motion. The defendant was sentenced to a term of imprisonment of eleven and one-half years. This appeal followed.

The defendant claims that the trial court improperly (1) found that the defendant had consented to undercover Detective Anthony Battistone's entry into the apartment, (2) applied the doctrine of inevitable discovery, and (3) failed to resolve the factual dispute as to whether Battistone signaled the undercover team before or after he saw the narcotics. We affirm the judgment of the trial court.

The trial court found the following facts. On January 31, 1991, Battistone received information from an informant that persons were selling heroin to anyone who came to the door of apartment 203 at 101-103 Wyllys Street, Hartford. Battistone and three other undercover police officers, Detective Arvid Leftwich, Detective James Mullen and Detective Richard Perotta, went to the apartment with the intent of conducting a "buy-bust."[3] Upon arrival at the apartment, Battistone knocked on the door while the other officers positioned themselves out of view, standing against the outside wall. The defendant[4] opened the door, but left the screen door latched, and asked, "What do you need?" Battistone replied, "I need a bag of dope."[5] The defendant then unlatched the screen door and motioned

---

[2] The hearing was a joint evidentiary hearing, involving the defendant and Mable Mercado, a codefendant.

[3] A "buy-bust" occurs when a police officer attempts to purchase illegal drugs and then arrests the person who offers to sell the drugs to the officer.

[4] The trial court found that the defendant was the occupant and lessee of the apartment.

[5] The witnesses testified that "a bag of dope" is $20 worth of heroin.

to Battistone to follow him. Battistone opened the screen door and followed the defendant into the kitchen. The other officers remained outside. Leftwich positioned himself so that he could see into the apartment in order to keep Battistone in view at all times.

After Battistone entered the apartment he observed several people seated at the kitchen table. The codefendant, Mable Mercado, was facing Battistone while holding a black purse on the table in front of her. Battistone immediately observed glassine bags of heroin, magazine paper wrappings,[6] and what appeared to be bundles of heroin in the black purse. Having been involved in more than 100 drug sales and buys, Battistone possessed expert knowledge of heroin and its packaging. Battistone gave a prearranged signal to Leftwich. At that point, the other officers ran into the apartment yelling "police" and displaying their badges. Subsequently, they arrested the defendant.

On the basis of those factual findings, the trial court determined that the officer's warrantless entry into the defendant's apartment was justified because the defendant consented when he unlatched the door and motioned to Battistone to follow him into the apartment.

I

The defendant first claims that the trial court improperly found that the defendant had consented to Battistone's entry into the apartment. We do not agree.

The fourth amendment to the United States constitution[7] and article first, § 7, of the Connecticut

---

[6] The trial court found that, in accordance with the trade and custom of heroin sellers, magazine paper is used to wrap heroin into "bundles" and "bricks."

[7] The fourth amendment to the Unites States constitution was made applicable to the states through the fourteenth amendment's due process clause. *Wolf* v. *Colorado,* 338 U.S. 25, 27–28, 69 S. Ct. 1359, 93 L. Ed. 1782 (1949).

constitution prohibit unreasonable searches and seizures. A warrantless search and seizure inside a home is "presumptively unreasonable." *Payton* v. *New York,* 445 U.S. 573, 586, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980); *State* v. *Geisler,* 222 Conn. 672, 682, 610 A.2d 1225 (1992); *State* v. *MacNeil,* 28 Conn. App. 508, 513, 613 A.2d 296, cert. denied, 224 Conn. 901, 615 A.2d 1044 (1992). Under such circumstances, the state bears the burden of proving that an exception to the warrant requirement exists. *Payton* v. *New York,* supra, 586 n.25; *State* v. *Geisler,* supra, 682; *State* v. *Zindros,* 189 Conn. 228, 237, 456 A.2d 288 (1983), cert. denied, 465 U.S. 1012, 104 S. Ct. 1014, 79 L. Ed. 2d 244 (1984). Consent and exigent circumstances are exceptions to the rule excluding evidence obtained as a direct result of a warrantless search and seizure. *State* v. *Ruth,* 181 Conn. 187, 193, 435 A.2d 3 (1980).

The parties do not dispute that the police conducted a warrantless search of the defendant's apartment. The parties also agree that there were no exigent circumstances and that the validity of the search and seizure depends entirely on whether the defendant consented to the warrantless entry.

The question of whether a defendant has given voluntary consent to enter or search his or her premises is a question of fact to be determined by the trial court by considering the totality of the circumstances surrounding the entry or search. *State* v. *Ortiz,* 17 Conn. App. 102, 103, 550 A.2d 22, cert. denied, 209 Conn. 828, 552 A.2d 1216 (1988). "It is to be decided by the trial court on the basis of the evidence before it that it finds credible, along with the reasonable inferences that may be drawn from that evidence. *State* v. *Reagan,* [209 Conn. 1, 8, 546 A.2d 839 (1988)]; *Dotson* v. *Warden,* 175 Conn. 614, 619, 402 A.2d 790 (1978). The ultimate question 'is whether the will of the consenting individual was overborne, or whether the consent

was his unconstrained choice.' *State* v. *Cobbs,* 7 Conn. App. 656, 659, 510 A.2d 213 (1986)." *State* v. *MacNeil,* supra, 28 Conn. App. 514.

Here, the trial court made the specific finding that the defendant had consented to Battistone's entry into the apartment.[8] " 'On appeal, the function of this court is limited solely to the determination of whether the factual findings of the trial court are clearly erroneous in view of the evidence . . . in the whole record. . . . It is the province of the trial court to pass upon the credibility of the witnesses and the weight to be accorded the evidence. . . . This court cannot find facts or draw conclusions from primary facts found, but can only review such findings to determine whether they could legally, logically and reasonably be found, thereby establishing that the trial court could reasonably conclude as it did.' . . . *Lynch* v. *Lynch,* 13 Conn. App. 433, 436–37, 537 A.2d 503 (1988). '[A] finding of fact by the trial court will not be overturned unless it is clearly erroneous. . . . We will, however, carefully review the record to ascertain whether the trial court's finding is supported by substantial evidence.' . . . *State* v. *Williams,* 227 Conn. 101, 113, 629 A.2d 402 (1993)." (Citations omitted.) *State* v. *Andrews,* 33 Conn. App. 590, 599, 637 A.2d 787, cert. denied, 229 Conn. 908, 640 A.2d 121 (1994).

The defendant claims that the trial judge erroneously stated that it was Battistone who testified that the defendant unlatched the screen door and motioned to

---

[8] In its oral decision, the trial court stated that there was no precedent in Connecticut for the standard of proof by which the state must prove consent by the defendant, either by a fair preponderance of the evidence or by clear and convincing evidence. The trial court used the higher standard of clear and convincing evidence in making its determination that the defendant had consented to Battistone's entry. Because the trial court used the higher standard and because this question was not raised before this court, we do not address it.

Battistone to enter. In fact it was Leftwich who so testified. The defendant claims that this is significant because Leftwich testified that the defendant had opened the screen door while Battistone testified that he himself had opened the screen door. Thus, the defendant argues that because the trial court specifically found that Battistone opened the screen door, it had rejected Leftwich's testimony that the defendant had opened the screen door, but it had accepted Leftwich's testimony that the defendant had unlatched the door and motioned to Battistone to enter. The defendant claims that such findings are irrational and internally inconsistent and, thus, clearly erroneous. "[W]e are mindful . . . where there is conflicting testimony, it is uniquely the function of the trier of facts to weigh the evidence and assess the credibility of the witnesses. *State* v. *Blevins,* 13 Conn. App. 413, 417, 536 A.2d 1002 (1988)." *State* v. *MacNeil,* supra, 28 Conn. App. 514. The trier of fact is free to accept part of a witness' testimony and reject another part. In addition, the state points out that Battistone was never asked who unlatched the door and, therefore, his testimony was not contrary to that of Leftwich.

After a careful review of the record, we cannot conclude that it was clearly erroneous for the trial court to conclude that the defendant consented to Battistone's entry to his apartment.

## II

The defendant next claims that the trial court improperly applied the doctrine of inevitable discovery. The defendant argues that the entry into the apartment by the three other officers, after the prearranged signal by Battistone, was a warrantless entry not provided for by an exception and, therefore, the evidence seized must be suppressed. We do not agree.

The trial court found that even if the entry into the apartment by the three other officers exceeded the consent given by the defendant to Battistone, the evidence would have been discovered inevitably by Battistone because the heroin was in plain view on the kitchen table.

"Under the inevitable discovery rule, evidence illegally secured in violation of the defendant's constitutional rights need not be suppressed if the state demonstrates by a preponderance of the evidence that the evidence would have been ultimately discovered by lawful means. [*Nix* v. *Williams,* 467 U.S. 431, 444, 104 S. Ct. 2501, 81 L. Ed. 2d 377 (1984).] To qualify for admissibility the state must demonstrate that the lawful means which made discovery inevitable were possessed by the police and were being actively pursued prior to the occurrence of the constitutional violation. *United States* v. *Cherry,* 759 F.2d 1196, 1205 (5th Cir. 1985); *United States* v. *Satterfield,* 743 F.2d 827, 846 (11th Cir. 1985). In *Nix* v. *Williams,* supra, 443, the United States Supreme Court observed that the operation of the exclusionary rule in situations where the police would have inevitably discovered the evidence by legal means already initiated would put the state in a worse position than it would have been in if no police misconduct had transpired. 'Fairness can be assured by placing the State and the accused in the same positions they would have been in had the impermissible conduct not taken place.' Id., 447." *State* v. *Badgett,* 200 Conn. 412, 433, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986).

The defendant raises a myriad of claims as to why the doctrine of inevitable discovery should not apply in this case and, thus, why the evidence should be suppressed. He claims that Battistone's signaling to the other officers, "inviting them in," exceeded the scope of consent, if any, destroying any legal basis for Batti-

stone's presence in the apartment, and, therefore, the discovery of the evidence could not have occurred by legal means already in process. It is curious that the defendant claims, in essence, that because the other officers' actions were either in bad faith or illegal, the doctrine should not apply. It is precisely in this type of situation that the doctrine is intended to apply. The application of the doctrine anticipates a lawful entry, a subsequent constitutional violation, and an inevitable discovery. It then provides for the admission of the evidence obtained, in spite of the constitutional violation.

We previously held that the trial court properly found that Battistone was in the apartment pursuant to the defendant's consent. The trial court also found that the heroin was in plain view in the purse on the kitchen table. Thus, prior to the time the other officers entered the apartment, Battistone was actively pursuing his investigation by lawful means that made the discovery of the heroin inevitable. Had the other officers not entered the apartment, Battistone would have inevitably discovered the heroin, even if he had not discovered it prior to giving the signal.

As in the first issue, the resolution of this issue turns on a question of fact. Thus, the function of this court is limited solely to the determination of whether the factual findings of the trial court are clearly erroneous in view of the evidence in the whole record. See also *State* v. *Roseboro,* 221 Conn. 430, 446, 604 A.2d 1286 (1992). We conclude, considering the totality of the evidence and the inferences reasonably to be drawn therefrom, that the trial court reasonably could have concluded that the state had met its burden of proving inevitable discovery by a preponderance of the evidence.

## III

The defendant's final claim is that the trial court improperly failed to resolve the factual dispute as to whether Battistone signaled the undercover team before or after he saw the narcotics. Because we conclude that the doctrine of inevitable discovery does apply, it is irrelevant for our purposes whether Battistone saw the heroin before or after he signaled the other officers to enter the apartment. We, therefore, need not address this issue.

The judgment is affirmed.

In this opinion the other judges concurred.