[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO SUPPRESS
The state has alleged that on March 22, 1999, the defendant, CT Page 16673 Kevin J. McColl, committed the crimes of Burglary in the First Degree in violation of General Statutes § 53a-101 (a)(2), Assault of a Victim Sixty or Older in the Second degree in violation of General Statutes § 53a-60b(a), and two counts of Robbery in the First degree in violation of General Statutes § 53a-134 (a)(3).
The defendant has moved to suppress his confession of April 1, 1999, asserting that his confession elicited by the Waterbury Police Department is inadmissible for the following reasons: 1. The defendant's confession was not given voluntarily; 2. The defendant's confession was done in derogation of the defendant's Miranda[1] warning; 3. The defendant's confession was done without the benefit of counsel, although counsel was requested; and 4. The defendant's confession was the product of an unreasonable search. An evidentiary hearing was held before this Court on November 3, 1999, at which Kevin McColl, Detective Eugene Coyle and Detective Nicholas Pesce testified.
 A. Facts
After considering the testimony and the credibility of the witnesses, the Court finds that the following facts were established at the hearing. In the morning of April 1, 1999, the defendant's companion, Tracy Fortier, went to the Waterbury police department and informed Sergeant Nardozzi that she believed her companion, the defendant, was responsible for burglarizing an apartment next to their home and assaulting one of the occupants. The police indicated that they were going to search for the defendant. Tracy Fortier provided the police a key to her home on April 1, 1999. The defendant shared the four room home with her and her children by him, and shared in the household expenses. They both had keys to the residence.
On April 1, 1999, Detective Eugene Coyle, Detective Nicholas Pesce and a uniformed officer knocked on the side door of the residence shared by the defendant and Tracy Fortier. The defendant opened the door. Detective Coyle informed the defendant that they were investigating a home invasion robbery. The defendant appeared to have just gotten out of bed and was clad only in a pair of jeans without shoes or socks. The testimony established that there was no odor of alcoholic beverages and no evidence of drugs or paraphernalia in sight. The defendant returned into the house, and the detectives and officer followed him stepping into the kitchen. At no time did the defendant CT Page 16674 object to the police presence in the house, nor challenge them in their entry.
Once the defendant and the officers were in the kitchen, Detective Coyle read the defendant his Miranda warnings from his card. Detective Coyle also asked the defendant if he would consent to having his residence searched for evidence of the crime in lieu of the officers obtaining a search warrant. The defendant signed a consent to search form in the kitchen, and identified his signature on that consent form. The defendant appeared to Detective Coyle to understand the rights being explained to him. While in the house, the defendant admitted that he was responsible for the burglary, that he had no cash in the house, and that he had thrown out the clothes he had worn at the time of the crime except for the sneakers, which he produced to the officers. The police did not discover any drug paraphernalia in the residence. The police were "in the defendant's home for approximately ten or fifteen minutes.
The detectives indicated that they would like to take the defendant's statement at the Waterbury police station. The defendant agreed. He was transported to the Waterbury Police Department, not handcuffed, and in a police vehicle with Detective Coyle and another police officer. At the police station, the defendant was placed in an interview room. Detective Coyle read the defendant his Miranda warnings preprinted on the top of the voluntary statement form. The defendant then related what had occurred on March 22, 1999, and Detective Coyle typed the statement on a computer. The defendant was able to see what Detective Coyle typed. The defendant read the statement on the computer screen and made no changes. Once the statement was printed on the voluntary statement form, the defendant read theMiranda warnings on the top of the statement out loud. The defendant initialed the Miranda warnings on the voluntary statement and signed the bottom of the statement. The entire encounter with the defendant from the moment of arrival of the officers at the house to the signing of the written statement lasted no longer than an hour an a half.
The defendant mentioned to the detectives that he was a "crack addict", but the detectives did not see any indication of intoxication or being under the influence of drugs. The defendant did not stagger or walk with an affected gait. The defendant was 29 years old at the time of the statement and had attended high school. CT Page 16675
 I
The defendant initially claims that his confession was not given voluntarily. In determining whether a statement was given voluntarily, the Court must "consider the totality of the circumstances surrounding a defendant's confession to determine whether it was the product of the defendant's own volition, no matter how impaired . . . or whether pressures exerted by officials have overborne the suspect's will, considering both the conduct of the officials and the capacity of the subject to resist pressure." (Citations omitted; internal quotation marks omitted) State v. Lapointe, 237 Conn. 694, 730, 678 A.2d 942, cert. denied, 519 U.S. 994, 117 S.Ct. 484, 136 L.Ed.2d 378 (1996) See also State v. Correa, 241 Conn. 322, at 338, 696 A.2d 944
(1997). "Factors that may be taken in to account, upon a proper factual showing, include: the youth of the accused; his lack of education; his intelligence; the lack of any advice as to his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment, such as the deprivation of food and sleep. " (Internal quotation marks omitted.) State v. Pinder, 250 Conn. 385, 419,736 A.2d 857 (1999).
The Court considers that at the time of the statement, the defendant was 29 years old, had a high school education, spoke and wrote English, and did not show any signs of physical impairment due to influence of alcohol or drugs. The defendant was given the advice of his constitutional rights twice before making his written statement. The defendant indicated and appeared to understand his rights. The defendant admitted to initialing the Miranda warnings and signing the statement. The detention was not prolonged; it was only an hour and a half long at the most. Lastly, the defendant was not deprived of food and sleep. Additionally, the defendant in his testimony at the suppression hearing indicated that he told Detective Coyle what occurred on March 22, 1999, for the benefit of obtaining a drug program. There was no testimony that the statement came from police pressure which overborne the defendant's will. After consideration of the totality of the circumstances, the court finds that the defendant's statement was voluntary.
 II
The defendant's next contention is that his confession was CT Page 16676 done in derogation of his Miranda warning. The advisements of a suspect's rights pursuant to Miranda, are required if a suspect is in custody and involved with interrogation by the police.State v. Pinder, supra 250 Conn. 409; State v. Hoeplinger,206 Conn. 278, 286, 537 A.2d 1010 (1988). The defendant has not presented an argument challenging the issue of whether the defendant was in custody or not. The court considers then the issue of whether the defendant voluntarily waived his rights upon the advisement of his Miranda rights. "[T]he Miranda rules condition the admissibility of an uncounselled statement taken during police interrogation on the state's demonstrating that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." State v. Pinder, supra, 250 Conn. 408. The officers complied with the Miranda rules because the defendant was given his Miranda warnings twice prior to making the written statement, once at the defendant's house and the second at the police station before the defendant began giving his statement. The defendant indicated that he understood the warnings and waived his rights orally and by initialing the warnings on the voluntary statement form. The defendant also did not ask for an attorney. There is no credible evidence that the defendant did not voluntarily waive his privilege against self-incrimination, and his right to counsel. The defendant, therefore, acted knowingly and intelligently in waiving his privilege against self-incrimination and his right to counsel.
 III
The defendant's third argument is that the confession was done without the benefit of counsel, although counsel was requested. There was no indication nor testimony from the defendant or any other witness during the hearing on the motion to suppress that the defendant ever indicated that he sought the advice of counsel despite two separate warnings by the Waterbury police that the defendant had the right to counsel.
 IV
Lastly, the defendant argues that the confession was the product of an unreasonable search. There is a question as to whether the confession was even the product of the questioned search. The court, however, need not address that issue because the court finds that the search was reasonable. CT Page 16677
"It is axiomatic that searches and seizures inside a home without a warrant are presumptively unreasonable. Payton v. NewYork, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980);State v. Guertin, 190 Conn. 440, 446, 461 A.2d 963 (1983). Statev. MacNeil, 28 Conn. App. 508, 513, 613 A.2d 296, cert. denied,224 Conn. 901, 615 A.2d 1044 (1992). A warrantless search or entry into a house is not unreasonable, however, under thefourth amendment to the United States constitution or article first, §7, of the Connecticut constitution when a person with authority to do so has freely consented. State v. Reagan, 209 Conn. 1, 7,546 A.2d 839 (1988). State v. MacNeil, supra, 513. The question of whether a defendant has given voluntary consent to enter or search his or her premises is a question of fact to be determined by the trial court by considering the totality of the circumstances surrounding the entry or search. State v. Ortiz,17 Conn. App. 102, 103, 550 A.2d 22, cert. denied, 209 Conn. 828,552 A.2d 1216 (1988). State v. Vargas, 34 Conn. App. 492, 496,642 A.2d 47, cert. denied, 230 Conn. 907, 644 A.2d 921 (1994)." (Internal quotation marks omitted.) State v. Rodriguez,49 Conn. App. 699, 700, 716 A.2d 137, cert. denied, 247 Conn. 943,723 A.2d 323 (1998). "The ultimate question is whether the will of the consenting individual was overborne, or whether the consent was his unconstrained choice. State v. Cobbs, 7 Conn. App. 656,659, 510 A.2d 213 (1986)." (Internal quotation marks omitted.)State v. Vargas, supra, 34 Conn. App. 496-97.
The credible facts established that the defendant allowed the officers in without any complaint and full cooperation. The defendant was informed of his Miranda warnings and voluntarily signed a consent to search form. Taking into consideration the totality of the circumstances, the Court finds that the will of the defendant was not overborne nor a product of his unconstrained choice. Furthermore, the defendant's companion, who lived in the same residence with the children of their relationship, and had the authority to allow entry, consented to the police entry by giving her house key to the police. Thus the search was not unreasonable.
 B
For the aforementioned reasons, the defendant's motion to suppress is denied.
So ordered. CT Page 16678
D'Addabbo, J.