## KHALID SHAH *v.* COVER-IT, INC., ET AL. (AC 24314)

Lavery, C. J., and Schaller and Dranginis, Js.

Submitted on briefs September 16—officially released November 16, 2004

*James T. Baldwin* filed a brief for the appellant (plaintiff).

*Anthony J. Pantuso III* filed a brief for the appellees (named defendant et al.).

*Opinion*

SCHALLER, J. The plaintiff, Khalid Shah, appeals from the judgment of the trial court, rendered after a

trial to the court, in favor of the defendants Cover-It, Inc., and Brian Goldwitz.[1] On appeal, the plaintiff claims that the court improperly found that he materially breached the employment contract between the parties. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to our discussion. On November 12, 1997, the parties entered into an employment contract by which the plaintiff became the structural engineering manager of Cover-It, Inc. Pursuant to the terms of the employment contract, the plaintiff was to receive an annual salary of $70,000, payable weekly, for a period of five years and subject to cost of living adjustments. In addition to his salary, the plaintiff was entitled to a commission of 2 percent of the sales generated from those products that he designed while employed, up to $1.5 million.

In addition to standard company benefits, the plaintiff also received three paid weeks of vacation on the completion of his first year of employment and the use of a company car. Furthermore, the plaintiff was permitted to work a flexible full-time schedule of thirty-five hours per week. He also was allowed to take time off from work to attend professional workshops and activities, and to resolve any prior professional obligations. The employment contract was subject to termination by either party with ninety days written notice. If the defendants terminated the contract, the plaintiff, on the completion of his first year of employment, was to receive

---

[1] In his complaint, the plaintiff named Cover-It, Inc., J & L Sales, Inc., W.B. Supply, Inc., and Brian Goldwitz as defendants. The parties subsequently agreed that the court needed to address the claims against only the plaintiff's employer, Cover-It, Inc., and its sole owner and president, Goldwitz. All of the counts directed at J & L Sales, Inc., and W.B. Supply, Inc., were deemed waived by the court.

monthly salary payments for the remainder of the five year period pursuant to a schedule.[2]

In June, 1998, the plaintiff requested and received permission for a period of vacation time. Goldwitz approved the time off with the understanding that the plaintiff would be gone for several weeks. At the end of August, 1998, the plaintiff had not returned. Goldwitz believed that the plaintiff had abandoned the employment contract and sent him notice that his health benefits were cancelled. The plaintiff returned to work in early September, 1998, and continued working until the middle of October. During that time period, the plaintiff worked two or three days per week and spent long periods of time visiting Internet web sites that were unrelated to his employment duties. The plaintiff also refused to use a time clock to document his attendance; instead, he simply indicated on his time card that he was present. On October 14, 1998, Goldwitz asked the plaintiff if certain designs would be completed. The plaintiff stated that he was not sure when the designs would be completed and that he would take his time in completing them. Goldwitz then terminated the plaintiff's employment.

The plaintiff commenced the present action on October 6, 1999. By way of a fourteen count amended complaint filed on November 20, 2001, the plaintiff alleged various causes of action against the defendants, including breach of contract, breach of the implied covenant of good faith and fair dealing, failure to pay wages in violation of General Statutes § 31-72 and negligent misrepresentation. The defendants filed an answer and a two count counterclaim. With respect to the plaintiff's claims, the court found in favor of the defendants on

---

[2] The contract provided that for up to two years of service, the plaintiff would be paid $20,000 per year, for three years of service, $30,000 per year and for four years of service, $40,000 per year.

all counts and rendered judgment accordingly. As to the counterclaim, the court concluded that the defendants had failed to prove damages and rendered judgment in favor of the plaintiff. This appeal followed.

On appeal, the plaintiff claims that the court improperly found that he had breached the contract or, in the alternative, that any breach was not material. Specifically, the plaintiff argues that the court failed to identify an express term or condition that was breached and instead merely found that certain acts, considered together, demonstrated a material breach prior to the termination of his employment.[3] Therefore, according to the plaintiff, the defendants were not relieved of their obligations, under the terms of the contract, to pay his full salary for ninety days and to pay his posttermination salary pursuant to the schedule set forth in the contract. We disagree.

As a preliminary matter, we identify the applicable standard of review. "The determination of whether a

---

[3] The plaintiff also claims that the court's memorandum of decision contains an inconsistency with respect to the finding of a material breach. Specifically, the plaintiff cites the following language: "The court finds in favor of the plaintiff on the defendants' counterclaim for breach of the implied covenant of good faith and fair dealing and breach of contract." We believe that the plaintiff has taken that language out of context. That language appeared in the section of the court's memorandum of decision in which the defendants' counterclaim was discussed. The court focused solely on the issue of damages when discussing the counterclaim. The court noted that the defendants had failed to present any evidence as to damages and that they did not address that issue in their posttrial brief. It is well established that damages are a necessary element for a breach of contract action. See *Rosato* v. *Mascardo*, 82 Conn. App. 396, 411, 844 A.2d 893 (2004) (elements of breach of contract action are formation of agreement, performance by one party, breach of agreement by other party and damages.) Thus, although the defendants failed to introduce any evidence of damages to support their counterclaim, there was ample evidence that the plaintiff materially breached the employment agreement and thereby relieved the defendants of any further contractual obligations. The concept of a material breach is separate and distinct from a cause of action for breach of contract. In short, because there is no inconsistency, the plaintiff's claim is without merit and does not warrant further discussion.

contract has been materially breached is a question of fact that is subject to the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) *Efthimiou* v. *Smith*, 268 Conn. 487, 493–94, 846 A.2d 216 (2004); see also *Miller* v. *Guimaraes*, 78 Conn. App. 760, 766–67, 829 A.2d 422 (2003). "Our authority, when reviewing the findings of a judge, is circumscribed by the deference we must give to decisions of the trier of fact, who is usually in a superior position to appraise and weigh the evidence." (Internal quotation marks omitted.) *LaVelle* v. *Ecoair Corp.*, 74 Conn. App. 710, 716, 814 A.2d 421 (2003).

*"It is a general rule of contract law that a total breach of the contract by one party relieves the injured party of any further duty to perform further obligations under the contract."* (Emphasis added.) *Rokalor, Inc.* v. *Connecticut Eating Enterprises, Inc.*, 18 Conn. App. 384, 391, 558 A.2d 265 (1989); see also *State* v. *Lex Associates*, 248 Conn. 612, 624, 730 A.2d 38 (1999); *669 Atlantic Street Associates* v. *Atlantic-Rockland Stamford Associates*, 43 Conn. App. 113, 125–26, 682 A.2d 572, cert. denied, 239 Conn. 949, 950, 686 A.2d 126 (1996); 2 Restatement (Second), Contracts § 237 (1981).

In *Bernstein* v. *Nemeyer*, 213 Conn. 665, 672, 570 A.2d 164 (1990), our Supreme Court endorsed the use of the multifactor test set forth in the Restatement (Second) of Contracts, supra, § 241, when determining whether a breach is material. "Section 241 of the Restatement (Second) of Contracts provides: 'In determining whether a failure to render or to offer performance is material, the following circumstances are significant: (a) the extent to which the injured party

will be deprived of the benefit which he reasonably expected; (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; [and] (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.' " *Bernstein* v. *Nemeyer*, supra, 672 n.8; *Strouth* v. *Pools by Murphy & Sons, Inc.*, 79 Conn. App. 55, 60, 829 A.2d 102 (2003). "The standards of materiality [are] to be applied in the light of the facts of each case in such a way as to further the purpose of securing for each party his expectation of an exchange of performances. [Section 241] therefore states circumstances, not rules, which are to be considered in determining whether a particular failure is material. 2 Restatement (Second), supra, § 241, comment (a)." (Internal quotation marks omitted.) *Strouth* v. *Pools by Murphy & Sons, Inc.*, supra, 60.

In the present case, the court found that the plaintiff took a ten week vacation, which exceeded the time authorized. After the plaintiff returned, he reported for work only two or three days per week and spent long periods of time visiting Internet web sites that were unrelated to his professional duties. Additionally, after being instructed by the human resources manager to document his attendance by use of a time clock, the plaintiff refused and simply marked his time sheets with a "P" for present. Last, the court found that when Goldwitz asked when certain designs would be completed, the plaintiff responded that he was not sure and that he would take his time in completing them. When reviewing those findings in light of the factors set forth

in § 241 of the Restatement (Second) of Contracts, we conclude that the court's finding of a material breach was not clearly erroneous.

It is clear from the court's findings that the plaintiff failed to perform under the obligations of the employment contract. As the court properly stated: "[O]ne cannot recover upon a contract unless he has fully performed his own obligation under it, has tendered performance or has some legal excuse for not performing." See *Automobile Ins. Co.* v. *Model Family Laundries, Inc.*, 133 Conn. 433, 437, 52 A.2d 137 (1947). As a result of the material breach by the plaintiff, the defendants were excused from further performance under the contract, and were relieved of the obligation to pay the plaintiff his full salary for ninety days and to pay his posttermination salary pursuant to the schedule set forth in the contract.

The judgment is affirmed.

In this opinion the other judges concurred.