# STATE OF CONNECTICUT *v.* VICTOR PARADIS
## (AC 24194)

Schaller, Flynn and Gruendel, Js.

Argued February 23—officially released September 27, 2005

*Nicholas P. Cardwell,* for the appellant (defendant).

*Lisa A. Riggione,* senior assistant state's attorney, with whom, on the brief, were *Scott J. Murphy,* state's attorney, and *Paul N. Rotiroti,* assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Victor Paradis, appeals from the judgment of conviction, rendered after a conditional plea of nolo contendere, of possession of narcotics with the intent to sell in violation of General Statutes § 21a-278 (a). On appeal, the defendant claims, inter alia,[1] that the court improperly relied on the testimony of police officers regarding the execution of a search warrant. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our discussion. Christopher Brody, a New Britain police officer, arranged a "controlled buy" of narcotics after meeting with a confidential informant. The informant knew of two individuals, one of whom was the defendant, who sold various illegal drugs, such as ecstasy, marijuana and cocaine. The defendant and his partner stored the drugs at a garage located at 205-207 Bassett Street. The defendant resided at 116 Lowell Street.

The informant indicated to Brody that the procedure for obtaining drugs from the defendant involved a third

---

[1] As we will discuss, the defendant raised several other claims on appeal that are not properly before us. Accordingly, we need not discuss the substantive merits of those claims.

party identified only as "Andy." The informant would call Andy and request a quantity of illegal drugs. After contacting the defendant or his partner, Andy would pick up the money from the informant, drive to the garage, known as a "stash house,"[2] on Bassett Street, and meet with the defendant or his partner to conduct the illegal transaction. Andy then would return to the informant and give him or her the drugs he had obtained.

On August 8, 2001, Brody met with the informant, who contacted Andy and asked for a quantity of cocaine. Andy arrived and was observed going to the garage on Bassett Street, where he met with the defendant. Both men went into the garage for a short time and then left. Andy was observed returning to the informant, who subsequently turned over a bag containing a white powder later determined to be cocaine.

On August 9, 2001, the garage owned by the defendant again was placed under surveillance. Jerry Chrostowski, a New Britain police officer, observed the defendant arrive, enter a gated area around the garage, proceed into the garage and, after a few minutes, exit the area. At that point, Chrostowski requested assistance, and the defendant's motor vehicle was stopped by the officers as he was exiting the property. As the defendant was removed from the vehicle, one of the officers noticed, in plain view, a plastic bag sticking out of the defendant's pocket. A field test indicated that the substance in the bag was cocaine, and the defendant was placed under arrest.

Following the defendant's arrest, applications for two search warrants were prepared by the investigating offi-

---

[2] Jerry Chrostowski, a New Britain police officer, testified that a stash house is a place where narcotics and illegal drugs are stored. Short, frequent visits are the type of behavior that is consistent with a location being used as a stash house. The purpose of a stash house is to prevent the loss of illegal substances by theft and to avoid police detection.

cers. One of the warrants was for the garage on Bassett Street, and the other was for the defendant's residence on Lowell Street. The search of the garage, which occurred first, revealed the presence of cocaine and marijuana.[3] The officers then searched the defendant's residence and discovered large amounts of cash, a small amount of narcotics, a cellular telephone, a bank statement, a water bill and a rental agreement.

On February 6, 2002, the defendant filed a motion to suppress tangible evidence, verbal statements and written statements. Specifically, the defendant argued that all of the evidence, including evidence from his garage and found on his person, as well as any of his statements made to the police officers, was subject to suppression as a result of unlawful searches and seizures. Following a hearing over the course of several days in July, 2002, the court, *Owens, J.*, denied the defendant's motion on October 18, 2002.

Pursuant to General Statutes § 54-94a,[4] the defendant entered a conditional plea of nolo contendere to the

---

[3] Thomas Steck, a detective with the New Britain police department, testified that after the defendant had been arrested, taken to the police station and advised of his rights pursuant to *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), he stated that the officers could expect to find less than one pound of marijuana and approximately ten ounces of cocaine. The inventory from the search indicated that the officers recovered a significantly greater amount of cocaine and marijuana from the stash house.

[4] General Statutes § 54-94a provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law provided a trial court has determined that a ruling on such motion to suppress or motion to dismiss would be dispositive of the case. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution." See also Practice Book § 61-1.

charge of possession of narcotics with the intent to sell in violation of § 21a-278 (a),[5] reserving his right to appeal from the denial of his motion to suppress. The court, *Handy, J.*, sentenced the defendant to a term of incarceration of twenty years, execution suspended after twelve years, with five years probation. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant raised claims on appeal that relate to three different docket numbers. As a preliminary matter, we must identify the issues raised by the defendant that are properly before us and require a substantive discussion of their merits. The issues raised in the defendant's brief that pertain to matters that have been waived by the defendant's nolo contendere plea are not properly before us and warrant no further discussion.

Stemming from the activity of August 8 and 9, 2001, three separate dockets were generated, all of which contained criminal charges against the defendant. In docket number 197032, the defendant was charged with possession of narcotics in violation of General Statutes § 21a-279 (a).[6] The docket number and accompanying charge appear to have originated from the initial stop of the defendant and subsequent discovery of the bag

---

[5] "A plea of nolo contendere, while not an express admission of guilt, is tantamount to a finding of guilt." *State* v. *Satti*, 2 Conn. App. 219, 221, 477 A.2d 144 (1984).

[6] General Statutes § 21a-279 (a) provides: "Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than seven years or be fined not more than fifty thousand dollars, or be both fined and imprisoned; and for a second offense, may be imprisoned not more than fifteen years or be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for any subsequent offense, may be imprisoned not more than twenty-five years or be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

of cocaine sticking out of his pocket. The state nolled that count.

Docket number 197033 contained nine counts.[7] Those charges seem to have been lodged as a result of the search at the garage on Bassett street. Following the court's denial of the defendant's motion to suppress, the state filed a substitute information with respect to that docket number. The sole charge in the substitute information was possession of narcotics with the intent to sell. The defendant pleaded nolo contendre to that charge.

Finally, in docket number 197034, the defendant was charged with possession of narcotics in violation of § 21a-279 (a). That charge apparently was premised on the results of the search of the defendant's residence on Lowell Street. The prosecutor also nolled that charge. Thus, despite the multiple docket numbers and charges against the defendant, the only crime that the defendant was found guilty of by virtue of his nolo contendere plea, and received a sentence for, was possession of narcotics with the intent to sell. That judgment of conviction is the only judgment properly before us.

On July 9, 2004, subsequent to the filing of this appeal, the state filed a motion to remand the case to the trial court for a determination of whether the ruling on the defendant's motion to suppress was dispositive of the case. This court granted the state's motion on September 13, 2004.[8] The court, *Handy, J.*, determined that the

---

[7] The charges initially set forth in docket number 197033 were as follows: Three counts of possession of narcotics in violation of § 21a-279 (a), two counts of possession of a controlled substance within 1500 feet of a school with the intent to sell in violation of General Statutes § 21a-278a (b), possession of narcotics with the intent to sell in violation of § 21a-278 (a), possession of a controlled substance in violation of General Statutes § 21a-279 (c), possession of four ounces or more of a cannabis-type substance in violation of General Statutes § 21a-279 (b) and operation of a drug factory in violation of General Statutes § 21a-277 (c).

[8] We have stated that such a finding is "not a matter of convenience, but rather a matter of substance necessary to achieve the goals of [§ 54-94a]." *State* v. *McGinnis*, 83 Conn. App. 700, 705, 851 A.2d 349 (2004).

court's ruling on the motion to suppress was dispositive, subject to the following articulation. The initial stop and seizure of the defendant and the statements made by him thereafter were not dispositive, nor was the issue of the money and drugs recovered at the defendant's residence on Lowell Street. The dispositive issue concerned the drugs seized at the garage on Bassett Street.[9]

We conclude that the issue concerning the timing of the search of the garage is the only claim reviewable on appeal.[10] In order to explain our determination, it will

[9] The court made the following determination concerning the defendant's motion to suppress: "So, let me make it clear on the record that there appeared to be three issues in relationship to these motions to suppress.

"Issue number one is the initial stop and the statements that flowed from that stop, dispositive. This court's response is no.

"Issue number two, are the drugs that were seized from the stash house referred to as 205-207 Basset Street, New Britain, dispositive. The court's response is yes.

"Issue number three, is the money and a small amount of cocaine which was seized from 116 Lowell Street, the parent's residence where, apparently, the defendant also resided, dispositive and the court's response to that is no."

[10] With respect to the initial stop and seizure, corresponding with the charge set forth in 197032, the defendant raised three issues on appeal. Specifically, the defendant claims that (1) the officers lacked probable cause to stop his vehicle in the driveway of Bassett Street on August 9, 2002, (2) the officers lacked probable cause to remove him from the vehicle following the stop and (3) Thomas Steck, a detective with the New Britain police department, testified untruthfully with respect to observing a bag containing drugs protruding from the defendant's pocket.

The defendant also raises three issues on appeal associated with the search of the garage on Bassett Street, which correspond with the charge set forth in the substitute information in docket number 197033. Specifically, the defendant argues that the court improperly (1) relied on the testimony of the officers regarding the execution of the search warrant, (2) concluded that he made statements while in police custody regarding ownership of certain property and (3) determined that he properly had been advised of and had waived his rights pursuant to *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), prior to making certain statements while in police custody.

The final issue raised by the defendant in his appellate brief concerns the charge contained in docket 197034 that related to the search of his residence on Lowell Street. Specifically, the defendant argues that the court improperly found probable cause to issue a search warrant for that location.

be helpful to discuss briefly the relationship between a nolo contendere plea and § 54-94a. "It is well established that an unconditional plea of guilty or nolo contendere, intelligently and voluntarily made, operates as a waiver of all nonjurisdictional defects and bars the later assertion of constitutional challenges to pretrial proceedings. . . . Therefore, only those issues fully disclosed in the record which relate either to the exercise of jurisdiction by the court or to the voluntary and intelligent nature of the plea are ordinarily appealable . . . ." (Internal quotation marks omitted.) *State* v. *Lasaga*, 269 Conn. 454, 479, 848 A.2d 1149 (2004). The defendant in the present case entered a conditional plea of nolo contendere pursuant to § 54-94a. Nevertheless, "[our Supreme Court] has been reluctant to invoke its authority to review an issue raised in connection with a conditional plea of nolo contendere when . . . that issue does not fall within the narrow scope of § 54-94a." (Internal quotation marks omitted.) Id.

A detailed explanation of § 54-94a is necessary for our discussion. Our Supreme Court has stated: "When viewed in light of the definition of subject matter jurisdiction and the statutes that create such jurisdiction, it becomes clear that § 54-94a neither confers nor curtails appellate subject matter jurisdiction. What § 54-94a does is abrogate, in certain circumstances, the waiver of constitutional rights that is implicit in a guilty or nolo contendere plea. . . .

"In enacting § 54-94a, the legislature created a new, expedited route to the appellate courts but it did not create a new jurisdictional doorway into those courts. Section 54-94a is intended to promote judicial economy by allowing the parties to litigate a suppression or dismissal issue fully in the trial court, and thereafter allowing the defendant to obtain review of an adverse ruling without the parties' or the court's expending additional resources." (Citations omitted; internal quotation

marks omitted.) *State* v. *Piorkowski*, 236 Conn. 388, 401–402, 672 A.2d 921 (1996); see also *State* v. *Kelley*, 206 Conn. 323, 334–35, 537 A.2d 483 (1988); *State* v. *Madera*, 198 Conn. 92, 98–99, 503 A.2d 136 (1985) (Supreme Court declined review of reserved claims outside scope of § 54-94a).

The appellate courts in this state consistently have required that § 54-94a be interpreted strictly. See *State* v. *Turner*, 267 Conn. 414, 425, 838 A.2d 947, cert. denied, 543 U.S. 809, 125 S. Ct. 36, 160 L. Ed. 2d 12 (2004); *State* v. *Gilnite*, 202 Conn. 369, 375–76, 521 A.2d 547 (1987); *State* v. *McGinnis*, 83 Conn. App. 700, 705, 851 A.2d 349 (2004).[11] For that reason, and to prevent the abuse of the use of conditional pleas, we limit our review to the claim found by the trial court to be dispositive. In this case, the court found that the sole dispositive issue

[11] In *State* v. *Revelo*, 256 Conn. 494, 775 A.2d 260, cert. denied, 534 U.S. 1052, 122 S. Ct. 639, 151 L. Ed. 2d 558 (2001), our Supreme Court explained that absent good cause, appellate courts should decline to review issues not raised properly within the provisions of General Statutes § 54-94a. *State* v. *Revelo*, supra, 503. The court also acknowledged that good cause will be established infrequently. Id. The three factors established in *Revelo* and used by our Supreme Court to find good cause in that case were (1) whether the issue raised by the defendant gives rise to an important issue that transcends the particular case, (2) whether the undisputed facts of the case result in a constitutional violation and (3) whether further clarification of an appellate opinion was necessary. Id., 503–504.

Similarly, in *State* v. *Chung*, 202 Conn. 39, 519 A.2d 1175 (1987), our Supreme Court reviewed an issue raised by the defendant's motion that was outside the ambit of § 54-94a. The court, using its supervisory powers over the administration of justice, reviewed the claim because the entire record was available, *both* the state and the defendant had an expectation of appellate review at the time of the plea, and review would preserve judicial resources. Id., 43–45.

We conclude that the present case does not fall within the rare situations detailed in *Revelo* and *Chung*. The defendant, by entering a nolo contendere plea, effectively waived any nonjurisdictional issues except those within the scope of § 54-94a. As a result of the trial court's finding, the only issue properly before this court concerns the search of the defendant's garage. Accordingly, we decline to review the defendant's other issues under the auspices of our supervisory authority.

was the search of the garage that was used as a stash house. We decline, therefore, to review the defendant's other claims pertaining to the initial stop and seizure of him or the search of his residence at Lowell Street.[12] Instead, we limit our review to the claim regarding the police officers' execution of the search warrant for the defendant's garage.

II

The defendant claims that the court improperly relied on the testimony of police officers regarding the execution of the search warrant. Specifically, the defendant argues that the officers executed the search in an improper manner by entering the garage before the warrant had been obtained.[13] According to the defendant, all of the evidence found by the officers was tainted by the premature search and, therefore, should have been suppressed. We disagree.

The following additional facts are necessary for our resolution of the defendant's appeal. The defendant's garage was enclosed by a fence and a locked gate. At the suppression hearing, Michael Sullivan, a New Britain police captain, testified that he was present at the garage on August 9, 2001. He stated that the search warrant was not obtained until after the defendant had been arrested. When asked how long after the arrest it

[12] In *Madera*, the defendant's plea agreement was specifically conditioned on the right to challenge issues that were outside the ambit of General Statutes § 54-94a. *State* v. *Madera*, supra, 198 Conn. 107 n.13. As a result of our Supreme Court's conclusion that it could not review those claims, there was a failure of consideration in the plea bargain process and, therefore, the conviction was set aside, and the case remanded for further proceedings. Id., 107–108. In the present case, the record does not reveal that the defendant expressly conditioned his plea on the ability to obtain appellate review of specific issues, and, therefore, our refusal to consider the merits of the defendant's other claims does not unravel the proceedings.

[13] We note that the defendant has not challenged the validity of the warrant to search the garage, but instead limited his appeal to the manner in which the warrant was executed and certain statements he gave following his arrest.

took to obtain the warrant and to return to the garage to execute it, Sullivan estimated that it took "a little less" than two hours.[14]

Using Sullivan's estimate of two hours, the defendant examined other testimony in an effort to demonstrate inconsistencies with respect to when the officers actually searched the garage. For example, Naik Hasit, the assistant dog warden, testified that he had been called to the garage by Sullivan after the defendant had been arrested. Hasit stated that he went to the other side of the fence and into the defendant's garage approximately thirty to forty-five minutes after arriving on the scene. Hasit also noted that before he went into the garage, the gate had remained closed and no one had gone over the fence prior to his entry.

Another witness to the search was the defendant's neighbor and tenant, Jasmine Sotomayor, who lived in the defendant's building with her mother. Sotomayor testified that she was in her bedroom at the time that the defendant was arrested. She claimed that while the defendant was present at the scene, she observed that the gate to his property was open and that police officers were on his property.

---

[14] Defense counsel examined Sullivan as follows:

"[Defense Counsel]: Now, captain, how long would you estimate it took to—after [the defendant] was arrested, to go back to the police department, continue preparing the affidavit—prepare the affidavit, have a judge review it and sign it, and go back to Bassett Street to execute it?

"[The Witness]: Well, anywhere up to two hours.

"[Defense Counsel]: So, your estimate is that from the time [the defendant] was arrested to the time you got back to execute the search warrant was about two hours?

"[The Witness]: I do not know. I am just guessing. Roughly. Probably. Maybe a little less.

"[Defense Counsel]: You are a captain with the New Britain police department. You know, you have done this before, I take it?

"[The Witness]: That is correct."

"[Defense Counsel]: All right, so this is a reasonable estimate on your part, two hours?

"[The Witness]: Yes."

Other police officers[15] testified that the locked gate was not opened and that the defendant's garage was not searched until the warrant had been obtained. The court found that although there were some inconsistencies with respect to the timing of the search, there was credible testimony that none of the officers had entered the defendant's garage before a warrant had been obtained.

On appeal, the defendant claims that the court improperly credited the testimony of the officers regarding the timing of the search of the defendant's garage. Specifically, he argues that Hasit arrived at the scene while the defendant was still present, and according to him, the search was conducted within thirty to forty-five minutes. That testimony contradicts, in the defendant's view, Sullivan's testimony that after the defendant was arrested, it took approximately two hours to obtain the warrant and to return to the garage to execute it. The defendant also points to the testimony of Sotomayor, who stated that she saw officers inside the fenced-in area while the defendant was present. Finally, the defendant notes that Officer Daniel McAloon stated that he searched the garage a "short time" after the defendant had been arrested. Put another way, the defendant contends that the sum of the testimony reveals that the search of the garage occurred before the officers obtained the warrant, and, therefore, any evidence obtained as a result of this invalid search should have been excluded.

At the outset, we note that "[u]nder both the federal and the state constitutions, the police must first obtain

---

[15] The court stated in its decision that Chrostowski testified that he was unaware of anyone entering the fenced-in area prior to the procurement of a search warrant. Additionally, Officer Daniel McAloon testified that the garage was not searched until the warrant was obtained. Both Steck and Sullivan stated that the locked gate was not opened until they received the search warrant.

a warrant before conducting a search, unless an exception to the warrant requirement applies. . . . Entry by the government into a person's home . . . is the chief evil against which the wording of the Fourth Amendment is directed." (Internal quotation marks omitted.) *State* v. *Outlaw*, 70 Conn. App. 160, 164, 797 A.2d 579 (2002). Of course, "[i]llegally obtained evidence is inadmissible in a criminal trial." (Internal quotation marks omitted.) *State* v. *Foster*, 258 Conn. 501, 508, 782 A.2d 98 (2001); see also *State* v. *DeFusco*, 224 Conn. 627, 631–32 n.8, 620 A.2d 746 (1993). Finally, we stated in *State* v. *Barlow*, 70 Conn. App. 232, 797 A.2d 605, cert. denied, 261 Conn. 929, 806 A.2d 1067 (2002), that "police may not conduct a search unless they first obtain a search warrant from a neutral magistrate after establishing probable cause. [A] search conducted without a warrant issued upon probable cause is per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." (Internal quotation marks omitted.) Id., 245.

"Under the exclusionary rule, evidence must be suppressed if it is found to be the fruit of prior police illegality. *Wong Sun* v. *United States*, [371 U.S. 471, 485, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963)]." (Internal quotation marks omitted.) *State* v. *Spencer*, 268 Conn. 575, 599, 848 A.2d 1183, cert. denied, 543 U.S. 957, 125 S. Ct. 409, 160 L. Ed. 2d 320 (2004). We have stated recently: "On appeal, we apply a familiar standard of review to a trial court's findings and conclusions in connection with a motion to suppress. *A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record.* . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . . Because a trial court's determination of the validity

of a . . . search [or seizure] implicates a defendant's constitutional rights, however, we engage in a careful examination of the record to ensure that the court's decision was supported by substantial evidence. . . . *However, [w]e [will] give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses.*" (Emphasis added; internal quotation marks omitted.) *State* v. *Weaver*, 85 Conn. App. 329, 335, 857 A.2d 376, cert. denied, 271 Conn. 942, 861 A.2d 517 (2004); see also 5 W. LaFave, Search and Seizure (3d Ed. 1996) § 11.7 (c), pp. 399–400. In this case, because the defendant has limited his claim on appeal to the factual determination of when the search occurred, we employ the clearly erroneous standard of review. See *State* v. *Barlow*, supra, 70 Conn. App. 245–46.

The court heard testimony from Chrostowski that he did not enter the fenced-in area until after a warrant had been obtained. When he returned to the garage, the gate was closed, and, to his knowledge, no other members of the police department had entered the garage or fenced-in area. Additionally, McAloon twice stated that the search was not conducted until a warrant had been procured. Finally, Sullivan stated that no officer entered the area until he unlocked the gate after the search warrant had been obtained.

The defendant's argument focuses on the timing of the search. He further requests that we determine that the officers' testimony was more than contradictory but, in fact, "objectively false when viewed in light of the totality of the evidence." Of course, we defer to the trial court's findings of fact. See *State* v. *Reyes*, 81 Conn. App. 612, 618, 841 A.2d 237 (2004). "[W]e are mindful . . . where there is conflicting testimony, it is uniquely the function of the trier of facts to weigh the evidence and assess the credibility of the witnesses. . . . The

trier of fact is free to accept part of a witness' testimony and reject another part." (Citations omitted; internal quotation marks omitted.) *State* v. *Vargas*, 34 Conn. App. 492, 498, 642 A.2d 47, cert. denied, 230 Conn. 907, 644 A.2d 921 (1994); see also *Shah* v. *Cover-It, Inc.*, 86 Conn. App. 71, 75, 859 A.2d 959 (2004).

The court, in its decision, specifically addressed the issue that the defendant now raises on appeal. The court considered the inconsistencies of the officers' testimony. After reciting the testimony of the various officers, the court stated: "Although there are some inconsistencies as to the timing of certain events, the court credits the testimony of the officers that no one entered the garage until a search warrant had been secured." The court implicitly discredited the statement made by Sotomayor and, as the trier of fact, was within its authority to do so.

Furthermore, although the time frames provided by the officers appear to be slightly inconsistent, we cannot conclude that the court's finding that the officers did not enter the garage until the warrant had been obtained was clearly erroneous.[16] "If there is conflicting evidence . . . the fact finder is free to determine which version of the event in question it finds most credible. . . . This court cannot sift and weigh evidence. . . . Otherwise, [t]his court would then, by way of fact-finding, be required to adjudicate the validity and the reliability of that evidence. At this stage of the proceedings, we are incapable of making those necessary determinations. . . . Thus . . . the testimony was for the trial court to assess and we have no appropriate role at this level in determining which of the various witnesses to credit." (Citation omitted; internal quotation marks omitted.) *State* v. *Aloi*, 86 Conn. App. 363, 375, 861 A.2d

---

[16] Our Supreme Court has noted that "[n]ot every inconsistency constitutes a falsehood." *State* v. *Gradzik*, 193 Conn. 35, 43 n.10, 475 A.2d 269 (1984).

1180 (2004), cert. granted on other grounds, 273 Conn. 901, 867 A.2d 840 (2005).

The record reveals that there was substantial evidence to support the court's finding that none of the officers entered the defendant's garage before the search warrant had been secured. Additionally, after a thorough and careful review of the record, we are not left with a firm and definite conviction that the court mistakenly made such a finding. As such, we conclude that the court's finding was not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.