******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* PHILLIP RUSSO
## (AC 45314)

Prescott, Elgo and Seeley, Js.

*Syllabus*

Pursuant to statute (§ 53a-71 (a) (8)), a person is guilty of sexual assault in the second degree when that person engages in sexual intercourse with another person and, inter alia, the actor is a school employee and the other person is a student enrolled in a school in which the actor works.

The defendant, who had been convicted, following a conditional plea of nolo contendere, of the crime of sexual assault in the second degree, appealed to this court, claiming that the trial court improperly denied his motions to dismiss. The defendant was employed as an assistant soccer coach for a girls soccer team at a local public high school. The victim attended the same high school and was a player on the girls soccer team. The victim, then seventeen years old, and the defendant began a sexual relationship in November, 2018, after the end of the soccer season, and the relationship continued through August, 2019. From the start of their relationship until the end of the school year, the victim remained a student at the high school but was no longer a member of the soccer team as a result of the season ending. The high school principal stated to the police that the defendant had resigned his position as a coach of the girls soccer team following their meeting in May, 2019, due to his travel associated with his employment as a pharmaceutical representative and his recent move. The defendant was arrested and charged, by way of a substitute information, with sexual assault in the second degree in violation of § 53a-71 (a) (8). The defendant filed two motions to dismiss the substitute information, both of which the court denied. Thereafter, the defendant entered a plea of nolo contendere that was conditioned on his right to appeal the denials of his motions to dismiss. On the defendant's appeal to this court, *held*:

1. The trial court properly denied the defendant's first motion to dismiss that claimed that the facts set forth in the arrest warrant affidavit were insufficient to support a finding of probable cause that the defendant committed the crime of sexual assault in the second degree in violation of § 53a-71 (a) (8) because he was not a school employee under the statutory definition: contrary to the defendant's claim, the contents of the arrest warrant affidavit and the additional information contained in the state's proffer in response to the first motion to dismiss, viewed in the light most favorable to the state, set forth sufficient facts to show probable cause that would warrant a person of reasonable caution to believe that the defendant was a school employee, as defined by statute (§ 53a-65 (13)), at the time that he had engaged in sexual intercourse with the victim in violation of § 53a-71 (a) (8), including the defendant's attendance at a January, 2019 soccer banquet, his participation at fitness drills for the high school girls soccer team in the spring of 2019, his discussions with the head coach of the high school girls soccer team in the spring of 2019, his attendance at a meeting in May, 2019, with the high school administration regarding his alleged relationship with the victim, and his oral resignation of his position as an assistant coach for the soccer team following that meeting; moreover, the question of whether the defendant was an employee was a factual question, and therefore a key inquiry for the jury to consider, as well as an element of the offense charged.

2. The defendant could not prevail on his claim that the trial court improperly denied his second motion to dismiss that alleged that § 53a-71 (a) (8) is unconstitutionally overbroad:

    a. This court was not persuaded by the state's argument that, because the trial court conducted a vagueness analysis in its memorandum of decision denying the defendant's second motion to dismiss, rather than addressing the overbreadth argument, and the defendant failed to make any effort to bring this discrepancy to the trial court's attention, the defendant's overbreadth claim was unreviewable: because the defendant appealed pursuant to the statute (§ 54-94a) governing appeals from condi-

tional pleas of nolo contendere, this court was limited to a determination of whether it was proper for the trial court to have denied the motions to dismiss, which was the very claim raised by the defendant in his appeal, and in making his claim concerning the denial of his second motion to dismiss, he argued that the denial of his motion was improper because § 53a-71 (a) (8) was unconstitutionally overbroad, the same argument he raised in his second motion to dismiss, at the hearing on that motion and on his conditional plea form, bringing the claim within the parameters of § 54-94a and, thus, making it reviewable; moreover, although the trial court failed to address the overbreadth claim in its memorandum of decision, this court's review of the overbreadth claim was appropriate under the circumstances of this case in light of the level of review this court affords to such claims and to decisions denying motions to dismiss, including that the overbreadth claim was not a new claim raised for the first time on appeal, the issue was fully briefed and argued before the trial court, both parties briefed the issue in their appellate briefs, the state conceded at the hearing before the trial court that it had no objection to the court making a finding that its rulings denying the motions to dismiss were dispositive of the case, and the state suffered no prejudice in light of this court's conclusion that the defendant could not prevail on the merits of the claim.

b. The defendant failed to meet his burden of demonstrating that the constitutional rights of individuals are substantially burdened in relation to the plainly legitimate sweep of § 53a-71 (a) (8), as the state has a legitimate interest in promoting a safe and healthy school environment for elementary and secondary school students by prohibiting teachers or other school employees from using a position of authority to pursue a sexual relationship with students enrolled in the educational system in which they are employed and misusing their access to students as a conduit for sexual activity; moreover, although the defendant provided a list of hypothetical scenarios in which § 53a-71 (a) (8), through its incorporation of the definition of a school employee in § 53a-65 (13), criminalizes conduct that he alleged would not advance the legitimate goal of protecting students, the defendant failed to demonstrate that § 53a-71 (a) (8) encompasses a substantial amount of constitutionally protected conduct, as the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge; furthermore, there must be a realistic danger that the statute itself will significantly compromise recognized first amendment protections of parties not before the court for it to be facially challenged on overbreadth grounds, the defendant did not make any showing that there are real individuals who fall into the hypothetical situations set forth in his second motion to dismiss or specify whose relationships have been chilled by the allegedly overbroad statute, the record contained no information or data concerning the percentage of adult students who are affected by the statute in relation to its legitimate sweep of protecting school students, the vast majority of whom likely are not adults, and the defendant's speculation about the impact of the statute on those hypothetical relationships was insufficient to demonstrate its overbreadth.

Argued April 18—officially released October 3, 2023

*Procedural History*

Substitute information charging the defendant with sexual assault in the second degree, brought to the Superior Court in the judicial district of Middlesex, where the court, *Dewey, J.*, denied the defendant's motions to dismiss; thereafter, the defendant was presented to the court, *Dewey, J.*, on a conditional plea of nolo contendere; judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*Jeffrey C. Kestenband*, for the appellant (defendant).

*Timothy F. Costello*, supervisory assistant state's attorney, with whom, on the brief, were *Michael A. Gailor*, state's attorney, *Jeffrey Doskos*, former supervi-

sory assistant state's attorney, and *Kevin M. Shay*, former senior assistant state's attorney, for the appellee (state).

*Opinion*

SEELEY, J. Following a conditional plea of nolo contendere, made pursuant to General Statutes § 54-94a,[1] the defendant, Phillip Russo, appeals from the judgment of conviction of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (8).[2] The defendant entered his conditional plea following the court's denials of his two motions to dismiss, the first of which alleged that the facts set forth in the arrest warrant affidavit were insufficient to sustain a charge alleging a violation of § 53a-71 (a) (8), and the second of which claimed that § 53a-71 (a) (8) is unconstitutionally overbroad. In connection with his first motion to dismiss, the defendant specifically argued that the arrest warrant lacked probable cause that he committed a crime because the allegations in the arrest warrant affidavit did not establish that he was a "school employee" for purposes of § 53a-71 (a) (8). As to his second motion to dismiss, the defendant contended that the statute impermissibly criminalizes a range of consensual romantic relationships that the state has no legitimate basis to regulate. We are not persuaded by the defendant's claims and, therefore, affirm the judgment of conviction.

On December 2, 2021, the state recited the following facts prior to the trial court's acceptance of the defendant's plea of nolo contendere. The defendant was employed as an assistant soccer coach for a girls soccer team at a local public high school. The victim[3] attended this high school and was a player on the girls soccer team. In November, 2018, the victim, then seventeen years old, babysat the defendant's children. After the forty year old defendant returned home, he watched television with the victim, and the two eventually engaged in sexual intercourse. The defendant and the victim continued their sexual relationship for the remainder of the school year. During this period, the victim remained a student at the high school but was no longer a member of the soccer team as a result of the season ending.

After a police investigation, the defendant was arrested on October 23, 2019, and charged with sexual assault in the second degree in violation of § 53a-71 (a) (9) (A).[4] The state subsequently charged the defendant by substitute information with sexual assault in the second degree in violation of § 53a-71 (a) (8). The defendant subsequently filed two motions to dismiss the information, both of which the court denied. Thereafter, the defendant entered a plea of nolo contendere that was conditioned on his right to appeal the denials of his motions to dismiss. On February 10, 2022, the court sentenced the defendant to a term of incarceration of four years, execution suspended after nine months, with a five year period of probation.[5] Additional facts will be set forth as necessary.

## I

The defendant's first claim challenges the court's denial of his first motion to dismiss, in which he alleged that the facts set forth in the arrest warrant affidavit were insufficient to support a finding of probable cause that the defendant committed the crime of sexual assault in the second degree in violation of § 53a-71 (a) (8). Specifically, he argues that the arrest warrant affidavit failed to establish probable cause that he was an employee of the high school, as that term is defined by General Statutes § 53a-65 (13),[6] at the time he engaged in sexual intercourse with the victim and, therefore, that his conduct did not constitute a violation of § 53a-71 (a) (8). The state responds, inter alia, that the arrest warrant affidavit and the proffer to the court contain sufficient factual allegations to establish probable cause to prosecute the defendant for violating § 53a-71 (a) (8). We agree with the state.

The following procedural history and additional facts are necessary for the resolution of this claim. On October 22, 2019, the police prepared an application for an arrest warrant on the ground that the defendant had violated § 53a-71 (a) (9) (A). The affidavit attached to the arrest warrant (arrest warrant affidavit) contained the following allegations.[7] The defendant began the process of building an emotional connection with the victim when she was a sophomore and fifteen years old. He gave her advice regarding her relationship with her then boyfriend, as well as other matters. Their sexual relationship began in November, 2018, after the end of the soccer season, and continued through August, 2019. The high school principal stated to the police that the defendant had resigned his position as a coach of the high school girls soccer team following their meeting in May, 2019, due to his travel associated with his employment as a pharmaceutical representative and his recent move.[8] The defendant spoke with the affiant at the police department regarding his relationship with the victim and provided a verbal statement that was video and audio recorded, in which he stated "that he maintained his position as the assistant girls soccer coach at [the high school] from 2012 until 2019" and admitted to having a sexual relationship with the victim. The defendant also acknowledged that he knew the victim was seventeen years old at the time when their sexual relationship began. The court signed the warrant on October 22, 2019, after concluding that there was probable cause that the defendant had violated § 53-71 (a) (9) (A). The defendant was arrested the next day.[9]

On April 28, 2021, the state filed a substitute information charging the defendant with violating § 53a-71 (a) (8). On May 13, 2021, the defendant filed his first motion to dismiss pursuant to Practice Book § 41-8 (2).[10] Specifically, the defendant challenged the allegations contained in the affidavit attached to the arrest warrant,

asserting that the allegations concerned "activity which does not violate . . . [§] 53a-71 (a) (8)." The defendant argued that the allegations in the affidavit established that his sexual relationship with the victim did not begin until the soccer season, and the victim's high school soccer career, had concluded. He further argued that, because the soccer season had ended and he no longer was coaching the soccer team during the period of the sexual relationship with the victim, there were no facts to support an allegation that he was a school employee as defined by § 53a-65 (13).

On June 9, 2021, the state filed a response to the first motion to dismiss. It countered that "[t]he employment relationship of the defendant during this time frame is an essential element of the charge. In light of all the potential evidence that the state seeks to admit, this is not a defense that can be determined without a trial on this issue." Additionally, the state noted its intention to present evidence regarding the defendant's attendance at a January, 2019 soccer banquet, his participation at fitness drills for the high school girls soccer team in the spring of 2019, his discussions with the head coach of the high school girls soccer team in the spring of 2019, his attendance at a meeting in June, 2019, with the high school administration regarding his alleged relationship with the victim, and his oral resignation of his position as an assistant coach for the soccer team at that meeting.

On July 14, 2021, the court held a hearing on the defendant's motions to dismiss. Defense counsel noted that the prosecution initially began with the charge that the defendant had violated § 53a-71 (a) (9), but the state subsequently filed a substitute information alleging that he violated § 53a-71 (a) (8). Defense counsel then argued that the defendant's responsibilities as a coach concluded at the end of the soccer season, before his alleged relationship with the victim began. Specifically, defense counsel claimed that the defendant was paid about one week after the end of the season, and he then returned various equipment to the school. Defense counsel further stated that the defendant's primary employment was in pharmaceutical sales and not as a teacher in the school system. Defense counsel concluded by stating that "what's in the affidavit doesn't support the offense that's being alleged under [§ 53a-71 (a) (8)]."

The prosecutor countered that, although the defendant disputed the contention that he was a school employee at the time of the sexual relationship with the victim, the resolution of that issue was to be made by the fact finder at the time of trial, rather than via a motion to dismiss filed pursuant to Practice Book § 41-8. Defense counsel responded that he was not claiming a lack of sufficient evidence but, rather, that the information itself was defective because the conduct alleged

did not fall within the parameters of § 53a-71 (a) (8).

On September 29, 2021, the court, *Dewey, J.*, issued a memorandum of decision denying the defendant's first motion to dismiss. The court stated that "[t]he defendant in the present matter asserts that he was not an employee of [the high school] when the sexual relationship began because his employment terminated at the end of the soccer season." The court further described this as a "key inquiry" for the consideration of the jury. The court then discussed cases from other jurisdictions that addressed the time frame of employment for purposes of establishing liability pursuant to statutes similar to § 53a-71 (a) (8). Ultimately, the court denied the defendant's motion to dismiss, concluding: "The state will be required to establish the precise temporal scope of the defendant's employment status at the time when the relationship commenced. In short, the question of whether the defendant was an employee is a factual question but it is also an element of the offense charged."

On appeal, the defendant argues that § 53a-71 (a) (8) proscribes sexual intercourse between a person presently employed at a high school and a presently enrolled student, and the affidavit attached to the arrest warrant contained no facts to support the allegation that the defendant remained an employee following the conclusion of the soccer season. The defendant further contends that the references in the affidavit to his "resignation" as a coach for the high school soccer team in May or June of 2019 merely served as his notice that he would not act in that capacity for the upcoming season.

With respect to the defendant's claim that the arrest warrant affidavit does not contain sufficient facts to sustain a charge of sexual assault in the second degree, the state counters in its appellate brief that the defendant, who had filed his first motion to dismiss pursuant to Practice Book § 41-8 (2), should have raised this claim pursuant to Practice Book § 41-8 (5) and General Statutes § 54-56.[11] As the state explains: "[W]hen deciding a motion to dismiss under Practice Book § 41-8 (2), a court reviews only the four corners of an information to determine whether it conforms to Practice Book requirements and provides adequate notice of a charge. A court does not decide whether the facts presented in an arrest warrant affidavit were adequate to make out a charge specified in a subsequent substitute information." The state further contends, in the alternative, that, "even if a court can review the adequacy of the state's potential proof under Practice Book § 41-8 (2), *or if this court treats the defendant's motion as one brought pursuant to Practice Book § 41-8 (5)* and . . . § 54-56, a trial court is not constrained to review only the facts alleged in an arrest warrant affidavit, absent concession that the facts alleged in the affidavit represent the entirety of the state's available proof [and thus]

the trial court was obliged to hear the state's proffer of its available evidence beyond the arrest warrant affidavit's allegations. Finally . . . the state's proffered proof, viewed in the light most favorable to the state, was sufficient to sustain a charge under . . . § 53a-71 (a) (8)." (Emphasis added.)

At oral argument before this court, the state specifically represented that it would not take issue if we were to assume that the defendant brought this motion to dismiss under Practice Book § 41-8 (5) and focus our analysis on whether the facts set forth in the arrest warrant affidavit and subsequent proffer before the court established probable cause. We will proceed with the state's suggested analytical pathway, bypassing the procedural questions regarding subdivisions (2) and (5) of Practice Book § 41-8, and limit our consideration to the merits of the defendant's claim, that is, whether the court improperly denied the motion to dismiss alleging insufficient evidence or cause to justify the bringing or continuing of the state's substitute information that charged him with violating § 53a-71 (a) (8). Ultimately, we conclude that the court properly denied the defendant's first motion to dismiss.

We begin with our standard of review. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . [O]ur review of the trial court's ultimate legal conclusion and resulting [denial] of the motion to dismiss [is] de novo. . . . Factual findings underlying the court's decision, however, will not be disturbed unless they are clearly erroneous. . . . The applicable standard of review for the denial of a motion to dismiss, therefore, generally turns on whether the appellant seeks to challenge the legal conclusions of the trial court or its factual determinations." (Citations omitted; internal quotation marks omitted.) *State* v. *Bonner*, 290 Conn. 468, 477–78, 964 A.2d 73 (2009); see also *State* v. *A. B.*, 341 Conn. 47, 55, 266 A.3d 849 (2021); *State* v. *Samuel M.*, 323 Conn. 785, 794–95, 151 A.3d 815 (2016). In the present case, the court heard no testimony and was not required to make any credibility determinations or factual findings at the hearing on the motions to dismiss filed by the defendant, and therefore the clearly erroneous standard does not apply. See *State* v. *Pelella*, 327 Conn. 1, 9 n.9, 170 A.3d 647 (2017); *State* v. *Taupier*, 197 Conn. App. 784, 796–97, 234 A.3d 29, cert. denied, 335 Conn. 928, 235 A.3d 525 (2020), cert. denied,      U.S.     , 141 S. Ct. 1383, 209 L. Ed. 2d 126 (2021).

Additionally, we note the following relevant legal principles. Our Supreme Court has explained that, "[w]hen assessing whether the state has sufficient evidence to show probable cause to support continuing prosecution, the court must view the proffered proof,

and draw reasonable inferences from that proof, in the light most favorable to the state. . . . The quantum of evidence necessary to establish probable cause . . . is less than the quantum necessary to establish proof beyond a reasonable doubt at trial . . . . In [ruling on the defendant's motion to dismiss], the court [must] determine whether the [state's] evidence would warrant a person of reasonable caution to believe that the [defendant had] committed the crime." (Citations omitted; internal quotation marks omitted.) *State* v. *Cyr*, 291 Conn. 49, 55–56, 967 A.2d 32 (2009); see also *State* v. *Greene*, 186 Conn. App. 534, 545–46, 200 A.3d 213 (2018) ("quantum of evidence necessary to establish probable cause exceeds mere suspicion, but is substantially less than that required for conviction" (internal quotation marks omitted)).

This court has explained that, "[w]here a motion to dismiss an information against an accused is made prior to trial, only probable cause sufficient to justify the continued prosecution need be established. The probable cause determination is, simply, an analysis of probabilities. . . . The determination is not a technical one, but is informed by the factual and practical considerations of everyday life on which reasonable and prudent [persons], not legal technicians, act. . . . The existence of probable cause does not turn on whether the defendant could have been convicted on the same available evidence. . . . Furthermore, we have concluded that proof of probable cause requires less than proof by a preponderance of the evidence. . . . To establish probable cause, the state was not required to present evidence as to each of the elements of the offense in a form that would be admissible at a later trial. In *State* v. *Kinchen*, [243 Conn. 690, 702–703, 707 A.2d 1255 (1998)], our Supreme Court found information contained in a written police report sufficient to establish probable cause to justify the continued prosecution of a defendant." (Citation omitted; internal quotation marks omitted.) *State* v. *Howell*, 98 Conn. App. 369, 378–79, 908 A.2d 1145 (2006). Finally, we note that if the evidence supports a finding of probable cause, then the motion to dismiss must be denied, even if such evidence might also support a contrary conclusion. See *State* v. *Pelella*, supra, 327 Conn. 19; see also *State* v. *Taupier*, supra, 197 Conn. App. 796; see generally *State* v. *McMillan*, 51 Conn. App. 676, 686, 725 A.2d 342 (dismissal of information is drastic action), cert. denied, 248 Conn. 911, 732 A.2d 179 (1999).

The defendant focuses his challenge on whether the state established probable cause that he was a "[s]chool employee" as defined in § 53a-65 (13)[12] at the time he engaged in sexual intercourse with the victim. After reviewing the contents of the arrest warrant affidavit and the additional information set forth in the state's proffer, viewed in the light most favorable to the state, we conclude that probable cause existed that would

warrant a person of reasonable caution to believe that the defendant was a "[s]chool employee" at the time that he had engaged in sexual intercourse with the victim in violation of § 53a-71 (a) (8).

As we previously have noted, the arrest warrant affidavit states that, according to both the defendant and the victim, the sexual relationship did not start until November, 2018, after the girls soccer season had ended. The principal of the high school told the police that the defendant had "resigned from his job" as the assistant coach of the soccer team following a meeting in May, 2019, during which he was confronted by school administrators about the nature of his relationship with the victim. During an interview with the police, the defendant stated that he "maintained his position as the assistant girls soccer coach at [the high school] from 2012 until 2019. The [defendant] said that he resigned from his assistant soccer coach job because his territory expanded for his work, he is a pharmaceutical representative."

In addition to the allegations contained in the arrest warrant affidavit, the state, in its proffer submitted in response to the defendant's motion to dismiss, alleged that, after the conclusion of the soccer season in 2018 and the start of his sexual relationship with the victim, the defendant had attended a banquet as part of his association with the high school soccer team in January, 2019, which was paid for by the town, and that during the spring of 2019, he had assisted at several fitness drills for current players and had several discussions with the head coach regarding the upcoming season. The proffer also alleged that on June 6, 2019, the defendant attended a meeting with the school's athletic director, the principal, and the acting superintendent regarding the allegations of his alleged relationship with the victim and that he orally resigned his position at the end of that meeting.

The allegations in the arrest warrant affidavit and in the state's proffer submitted in response to the defendant's motion to dismiss, therefore, established probable cause to believe that the defendant was employed as a coach at the victim's high school until he resigned in the spring of 2019, which included the time period during which he had engaged in sexual intercourse with the victim.[13]

On appeal, the defendant relies on the decision of the Vermont Supreme Court in *State* v. *Graham*, 202 Vt. 43, 147 A.3d 639 (2016). In that case, the state appealed from the dismissal of charges against the defendant of three counts of sexual exploitation of a minor, which were based on the defendant's sexual acts with a student during the summer break. Id., 44; see Vt. Stat. Ann. tit. 13, § 3258 (a) (2014). The defendant was employed for three consecutive school years under a collective bargaining agreement. *State* v. *Graham*,

supra, 44. The terms of employment established that she began working two days before school started, and her employment terminated one day after the last day of student instruction. Id. The defendant was charged with engaging in sexual acts with a student in the time period after her contract for the 2013–2014 school year ended and before her contract for the 2014–2015 school year began. Id., 45. The trial court granted the defendant's motion to dismiss, reasoning that the plain meaning of the Vermont statute required "the actor to be in a position of power, authority, or supervision at the time of the sex act, and that [the] defendant was not employed by [the union] at the time of the charged sex acts." Id., 46.

In affirming the decision of the trial court, the Vermont Supreme Court rejected the state's argument that the question of whether the defendant was a school employee during the summer of 2014 was a factual question for the jury to decide. Id., 47. Specifically, it reasoned: "The evidence, viewed most favorably to the [s]tate, supports the trial court's findings that [the] defendant was a school-year employee who was not under contract with [the union] during the summer of 2014 and had no supervisory responsibilities for . . . students at that time. . . . Accordingly, the trial court did not err by not submitting to a jury the question of whether [the] defendant was an employee . . . during the summer of 2014." Id. The Vermont Supreme Court also determined that the statute at issue imposed criminal liability "only when the sex act occurred during the time period in which the actor was in a position of supervision and was undertaking the responsibilities that put the actor in a position of supervision." Id., 49.

The present case is distinguishable from *State* v. *Graham*, supra, 202 Vt. 43. First, the statute at issue in *Graham*, which requires supervision or authority at the time of the acts, is more stringent than § 53a-71 (a) (8), which merely requires that the defendant be employed by the school and the victim be a student, and they need not be at the same school. Moreover, in *Graham*, the trial court conducted an evidentiary hearing with witnesses, at which evidence and testimony was presented establishing that the defendant was a contract employee with a defined period of employment and that the alleged sex acts occurred during a gap in her employment. Id., 44–46. In contrast, the present case lacks such clear delineation, as the hearing on the defendant's motion to dismiss was not an evidentiary hearing. Also, the trial court was limited to considering the arrest warrant affidavit and the evidentiary proffer from the state, which did not definitively establish, like in *Graham*, that the defendant in the present case was not an employee at the time of his sexual relationship with the victim. As noted, when the state's proffered proof is viewed in the light most favorable to the state, a person of reasonable caution could conclude that the

defendant was employed at the time he engaged in the prohibited conduct with the victim. Under these circumstances, the court in the present case determined that the defendant's employment status at the time of the sexual relationship was, in part, a factual question and "a key inquiry for a jury to consider" and, in part, an element of the offense that the state would be required to establish. Accordingly, we conclude that the defendant's reliance on *Graham* is unavailing.

For these reasons, in the present case, we conclude that the court properly denied the defendant's first motion to dismiss the information.

II

The defendant next claims that the court improperly denied his second motion to dismiss, in which he alleged that § 53a-71 (a) (8) is unconstitutionally over-broad. Specifically, he argues that there are numerous scenarios in which § 53a-71 (a) (8), through its incorporation of the definition of a school employee as set forth in § 53a-65 (13), "criminalizes conduct that would not advance the legitimate goal of protecting students." The state counters that this claim is unreviewable because the trial court did not address the defendant's overbreadth claim in its memorandum of decision. Additionally, the state asserts that, if the claim is reviewable, the defendant failed to demonstrate that § 53a-71 (a) (8) reaches a substantial amount of constitutionally protected conduct. We disagree with the state's reviewability argument but, on the merits, conclude that the defendant cannot prevail on his overbreadth claim.

The following additional undisputed facts and procedural history are relevant to our resolution of this claim. On May 13, 2021, the defendant filed his second motion to dismiss the information pursuant to the fifth and fourteenth amendments to the United States constitution on the ground that § 53a-71 (a) (8) is unconstitutionally overbroad.[14] Specifically, he contended that § 53a-71 (a) (8) threatens certain rights protected by the federal constitution and makes illegal constitutionally protected speech or conduct. In his second motion to dismiss, the defendant set forth various examples of constitutionally protected activities that would be prohibited and would subject the actors to a felony conviction and up to ten years of incarceration for each act.[15]

On July 1, 2021, the state filed its response to the defendant's second motion to dismiss. Therein, it argued that, pursuant to *State* v. *McKenzie-Adams*, 281 Conn. 486, 499, 915 A.2d 822, cert. denied, 552 U.S. 888, 128 S. Ct. 248, 169 L. Ed. 2d 148 (2007), overruled in part on other grounds by *State* v. *Elson*, 311 Conn. 726, 91 A.3d 862 (2014), "[a]ny fundamental right of sexual privacy 'does not protect sexual intimacy in the context of an inherently coercive relationship, such as the teacher-student relationship, wherein consent might

not easily be refused.' " The state, therefore, requested that the trial court deny the defendant's second motion to dismiss alleging his overbreadth claim. The defendant filed a reply to the state's response on July 7, 2021.

At the July 14, 2021 hearing, the court heard argument on the defendant's second motion to dismiss concerning his overbreadth claim. At the outset, defense counsel specifically stated that he was making an overbreadth argument and not presenting a claim that the statute is unconstitutionally vague. He then referred to the various examples he had set forth in his motion, claiming that § 53a-71 (a) (8) criminalizes permissible behavior between consenting adults. In response, the state, again, referred to *State* v. *McKenzie-Adams*, supra, 281 Conn. 486. Specifically, the state acknowledged that the analysis in that case focused on a void for vagueness argument but emphasized the court's determination that "any fundamental right of sexual privacy does not protect sexual intimacy in the context of an inherently coercive relationship, such as the teacher-student relationship . . . ." It further argued that the defendant failed to demonstrate that § 53a-71 (a) (8) reaches a substantial amount of constitutionally protected conduct.

On September 29, 2021, the court issued a memorandum of decision denying the defendant's second motion to dismiss, in which it focused its decision on whether the statute is void for vagueness.[16] In doing so, the court failed to address the specific constitutional claim raised in the defendant's second motion to dismiss, namely, his overbreadth claim. Despite this, the defendant did not take any steps to prompt the court to reconsider or correct its decision.

On December 2, 2021, pursuant to § 54-94a, the defendant entered a plea of nolo contendere to the charge of sexual assault in the second degree in violation of § 53a-71 (a) (8), reserving the right to appeal from the denials of his motions to dismiss.[17] During that proceeding, the court found that its decisions denying the motions to dismiss were dispositive of the case.

A

We first address the state's reviewability argument. The state contends that, because the trial court did not address the defendant's overbreadth argument in its memorandum of decision denying the defendant's second motion to dismiss but, instead, conducted a vagueness analysis, coupled with the defendant's failure to make any effort to bring this discrepancy to the attention of the trial court, we should not review this claim.[18] Specifically, the state argues that, "absent the defendant compelling a decision on his overbreadth claim prior to asking the court to accept his conditional nolo plea, the trial court cannot be said to have determined, in accordance with . . . § 54-94a, 'that a ruling

on such . . . motion to dismiss would be dispositive of the case' because there is no indication that the court discerned the issue in rendering its judgment."[19] In other words, the state argues that the claim raised on appeal by the defendant does not fall within the parameters of § 54-94a. The state cites *State* v. *Revelo*, 256 Conn. 494, 503, 775 A.2d 260, cert. denied, 534 U.S. 1052, 122 S. Ct. 639, 151 L. Ed. 2d 558 (2001), for the proposition that, "[i]n the absence of a showing of good cause, an appellate court should decline to review an issue that has not been raised in accordance with the provisions of § 54-94a." (Internal quotation marks omitted.) We are not persuaded by the state's argument.

A review of § 54-94a and the legal principles germane to the state's reviewability argument is appropriate. We start with the language of § 54-94a, which provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law provided a trial court has determined that a ruling on such motion to suppress or motion to dismiss would be dispositive of the case. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

Section 54-94a permits a defendant to enter a conditional plea of nolo contendere[20] while preserving the right to appeal in certain specified circumstances, namely, the denial of a motion to dismiss or a motion to suppress that is dispositive of the case. See, e.g., *State* v. *Turner*, 267 Conn. 414, 424–25, 838 A.2d 947, cert. denied, 543 U.S. 809, 125 S. Ct. 36, 160 L. Ed. 2d 12 (2004); *State* v. *Munoz*, 104 Conn. App. 85, 90, 932 A.2d 443 (2007). "In enacting § 54-94a, the legislature created a new, expedited route to the appellate courts but it did not create a new jurisdictional doorway into those courts. Section 54-94a is intended to promote judicial economy by allowing the parties to litigate a suppression or dismissal issue fully in the trial court, and thereafter allowing the defendant to obtain review of an adverse ruling without the parties' or the court's expending additional resources." (Internal quotation marks omitted.) *State* v. *Paradis*, 91 Conn. App. 595, 602, 881 A.2d 530 (2005). We emphasize, however, that this statute neither creates nor curtails appellate subject matter jurisdiction; rather, it abrogates the waiver of constitutional rights that is implicit in a guilty or nolo contendere plea in the context of a denial of a motion to dismiss or a motion to suppress when the ruling on such a motion is dispositive of the case. See *State* v.

*Joseph*, 161 Conn. App. 850, 857, 129 A.3d 183 (2015), cert. denied, 320 Conn. 923, 133 A.3d 878 (2016); see also *State* v. *Revelo*, supra, 256 Conn. 501 n.14. "The appellate courts in this state consistently have required that § 54-94a be interpreted strictly. . . . Our Supreme Court has refused to expand this statutory right to plead conditionally and appeal beyond the issues explicitly enumerated in § 54-94a." (Citation omitted; internal quotation marks omitted.) *State* v. *Joseph*, supra, 857.[21] In the present case, it is undisputed that the defendant entered a nolo contendere plea conditioned, in part, on the right to appeal the denial of his second motion to dismiss, which is one of the enumerated motions set forth in § 54-94a. As required by § 54-94a, the trial court also determined that its decision denying that motion was dispositive of the case. The defendant clearly raised his overbreadth argument in his second motion to dismiss and at the hearing on that motion. The trial court denied that motion, albeit on a different ground, and it determined that its decision was dispositive of the case. On his plea form, the defendant indicated that he was entering a plea of nolo contendere conditioned on his right to appeal pursuant to § 54-94a. In the space reserved for naming the specific motions that were denied by the trial court and on which the defendant based his conditional plea, the defendant specifically noted: "motions to dismiss based on warrant affidavit [and] overbreadth dated May 13, 2021." Below the defendant's notation, the form states: "A trial court determined that a ruling on the above motions to suppress or motion[s] to dismiss would be dispositive of the case . . . ." That is followed by the signature of the trial judge, who checked the "yes" box to that statement.

The defendant has appealed pursuant to § 54-94a. In such an appeal, this court is limited to a determination of whether it was proper for the court to have denied the motions to dismiss, which is the very claim raised by the defendant in this appeal. In making that claim concerning the denial of his second motion to dismiss, the defendant argues that the denial of his motion was improper because § 53a-71 (a) (8) is unconstitutionally overbroad, which is the same argument he raised in his second motion to dismiss, at the hearing on that motion and on his conditional plea form. Under these circumstances, we conclude that the defendant's claim in this appeal falls within the parameters of § 54-94a.

Having determined that the defendant's overbreadth claim on appeal falls within the parameters of § 54-94a and is, thus, reviewable, we also conclude that our review of the defendant's overbreadth claim, despite the court's failure to address the claim in its memorandum of decision denying the motion to dismiss, is appropriate under the circumstances of this case in light of the level of review we afford to such claims and to decisions denying motions to dismiss. Specifically, a

claim challenging the constitutionality of a statute "presents a question of law over which our review is plenary." (Internal quotation marks omitted*.) Your Mansion Real Estate, LLC* v. *RCN Capital Funding, LLC*, 206 Conn. App. 316, 331, 261 A.3d 110, cert. denied, 339 Conn. 908, 260 A.3d 1227 (2021). Moreover, as we stated previously in this opinion, "[o]ur review of the trial court's ultimate legal conclusion and resulting [denial] of the motion to dismiss will be de novo." (Internal quotation marks omitted.) *State* v. *Bonner*, supra, 290 Conn. 478. Accordingly, because the issue on appeal presents a pure question of law, "the legal analysis undertaken by the trial court is not essential to this court's consideration of the [issue] on appeal." (Internal quotation marks omitted.) *State* v. *Crespo*, 145 Conn. App. 547, 562 n.7, 76 A.3d 664 (2013), aff'd, 317 Conn. 1, 115 A.3d 447 (2015). Moreover, it also bears repeating that the defendant's overbreadth claim is not a new issue raised on appeal but, rather, was fully briefed and argued before the trial court, both parties have briefed the issue in their appellate briefs to this court, and the state conceded at the hearing before the trial court that it had no objection to the court making a finding that its rulings denying the motions to dismiss would be dispositive of the case. See footnote 22 of this opinion. As a result, this is not a situation in which it would be unfair to the state or the court for this court to review the defendant's claim that § 53a-71 (a) (8) is unconstitutionally overbroad. See *Imperial Casualty & Indemnity Co.* v. *State*, 246 Conn. 313, 320–23, 714 A.2d 1230 (1998). Moreover, the state also has suffered no prejudice in the circumstances of this case in light of our conclusion that the defendant cannot prevail on the merits of his overbreadth claim. See *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 158 n.28, 84 A.3d 840 (2014) ("[r]eviewing an unpreserved claim when the party that raised the claim cannot prevail is appropriate because it cannot prejudice the opposing party and such review presumably would provide the party who failed to properly preserve the claim with a sense of finality that the party would not have if the court declined to review the claim"). We, therefore, proceed to a review of the merits of the defendant's claim.[22]

B

In claiming that § 53a-71 (a) (8) is unconstitutionally overbroad, the defendant argues that there are numerous scenarios in which § 53a-71 (a) (8), through its incorporation of the definition of a school employee in § 53a-65 (13), "criminalizes conduct that would not advance the legitimate goal of protecting students." The defendant further contends that, by prohibiting a wide range of normal, widely accepted romantic relationships that the government lacks a legitimate interest in regulating, the statute criminalizes conduct that is constitutionally protected. The state counters that the

defendant has failed to demonstrate that this statute encompasses a substantial amount of constitutionally protected conduct. We agree with the state.

As an initial matter, we note that "[l]egislative enactments carry with them a strong presumption of constitutionality. . . . A party challenging the constitutionality of a validly enacted statute bears the heavy burden of proving the statute unconstitutional beyond a reasonable doubt. . . . In the absence of weighty countervailing circumstances, it is improvident for the court to invalidate a statute on its face." (Internal quotation marks omitted.) *State* v. *Bennett-Gibson*, 84 Conn. App. 48, 56, 851 A.2d 1214, cert. denied, 271 Conn. 916, 859 A.2d 570 (2004); see also *State* v. *Billings*, 217 Conn. App. 1, 26, 287 A.3d 146 (2022), cert. denied, 346 Conn. 907, 288 A.3d 217 (2023). This burden is especially heavy in the context of a facial challenge. See *State* v. *Ryan*, 48 Conn. App. 148, 154, 709 A.2d 21, cert. denied, 244 Conn. 930, 711 A.2d 729, cert. denied, 525 U.S. 876, 119 S. Ct. 179, 142 L. Ed. 2d 146 (1998). Additionally, we indulge every presumption in favor of the constitutionality of the statute and approach a claim of unconstitutionality "with caution, examine it with care, and sustain the [statute] unless its invalidity is clear." (Internal quotation marks omitted.) *State* v. *McKenzie-Adams*, supra, 281 Conn. 500.

Our Supreme Court previously has stated: "[I]n evaluating the defendant's challenge to the constitutionality of the statute, we read the statute narrowly in order to save its constitutionality, rather than broadly in order to destroy it. . . . In so doing, we take into account any prior interpretations that this court, our Appellate Court and the Appellate Session of the Superior Court have placed on the statute. . . . [W]e may also add interpretive gloss to a challenged statute in order to render it constitutional. In construing a statute, the court must search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Indrisano*, 228 Conn. 795, 805–806, 640 A.2d 986 (1994).

Next, we set forth a general description of the overbreadth doctrine. "The essence of an overbreadth challenge is that a statute that proscribes certain conduct, even though it may have some permissible applications, sweeps within its proscription conduct protected by the first amendment. . . . Overbroad statutes, like vague ones, inhibit the exercise of constitutionally protected conduct. . . . A party has standing to raise an overbreadth claim, however, only if there [is] a realistic danger that the statute will significantly compromise recognized [f]irst [a]mendment protections of parties not before the [c]ourt . . . . In *Broadrick* v. *Oklahoma*, 413 U.S. 601, 615, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973), the Supreme Court stated that where con-

duct and not merely speech is involved, we believe that the overbreadth of a statute must not only be *real*, but *substantial* as well, judged in relation to the statute's plainly legitimate sweep." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Snyder*, 49 Conn. App. 617, 623–24, 717 A.2d 240 (1998); see also *Virginia* v. *Hicks*, 539 U.S. 113, 118–19, 123 S. Ct. 2191, 156 L. Ed. 2d 148 (2003).[23] Finally, we note that in *Broadrick* v. *Oklahoma*, supra, 613, the United States Supreme Court stated that "[a]pplication of *the overbreadth doctrine . . . is, manifestly, strong medicine. It has been employed by the [c]ourt sparingly and only as a last resort.* Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute." (Emphasis added.) Id.; see also *United States* v. *Hansen*, 599 U.S. 762, 770, 143 S. Ct. 1932, 216 L. Ed. 2d 692 (2023) ("[b]ecause it destroys some good along with the bad, [i]nvalidation for overbreadth is strong medicine that is not to be casually employed" (internal quotation marks omitted)).

Our Supreme Court has explained the rationale underlying the overbreadth doctrine. "A clear and precise enactment may . . . be overbroad if in its reach it prohibits constitutionally protected conduct. . . . A single impermissible application of a statute, however, will not be sufficient to invalidate the statute on its face; rather, to be invalid, a statute must reach a substantial amount of constitutionally protected conduct. . . . A [defendant] may challenge a statute as facially overbroad under the first amendment, even if the [defendant's] conduct falls within the permissible scope of the statute, to vindicate two substantial interests: (1) eliminating the statute's chilling effect on others who fear to engage in the expression that the statute unconstitutionally prohibits; and (2) acknowledging that every [person] has the right not to be prosecuted for expression under a constitutionally overbroad statute. . . . Thus, the [defendant] has standing to raise a facial overbreadth challenge to the [statute] and may prevail on that claim if he can establish that the [statute] reaches a substantial amount of constitutionally protected conduct even though he personally did not engage in such conduct." (Internal quotation marks omitted.) *State* v. *Cook*, 287 Conn. 237, 244–45, 947 A.2d 307, cert. denied, 555 U.S. 970, 129 S. Ct. 464, 172 L. Ed. 2d 328 (2008).

Our Supreme Court's decision in *State* v. *McKenzie-Adams*, supra, 281 Conn. 486, is particularly helpful to the resolution of this appeal, as it addressed both an alleged constitutional right to sexual privacy and the purpose underlying § 53a-71 (a) (8). In that case, the defendant, a teacher, was convicted of thirteen counts of sexual assault in the second degree in violation of § 53a-71 (a) (8), involving two victims who were students at the school where he taught. Id., 489, 491. On

appeal, he claimed, inter alia, that this statute violated his right to sexual privacy under the federal and state constitutions. Id., 489–90. Specifically, he argued that § 53a-71 (a) (8) is invalid on its face and as applied to the facts of his case because it violated his right to sexual privacy, which included the right to engage in noncommercial consensual sexual intercourse with individuals over the age of consent. Id., 498. In rejecting the defendant's claim, our Supreme Court stated: "We need not decide whether a fundamental right of sexual privacy exists generally because we agree with the state that, even if such a right exists, it does not protect sexual intimacy in the context of an inherently coercive relationship, such as the teacher-student relationship, wherein consent might not easily be refused." Id., 498–99.

With respect to the rationale underlying § 53a-71 (a) (8), our Supreme Court stated: "It is beyond cavil that the government has a legitimate interest in providing a safe and healthy educational environment for elementary and secondary school students. . . . To this end, the legislature reasonably could have concluded that school employees are given unique access to students, and are thereby vested with great trust and confidence by the school, parents, and public, and [the legislature could have] sought to preserve or strengthen that trust by unequivocally prohibiting school employees from misusing their access to students as a conduit for sex. . . . Moreover, the legislature reasonably could have concluded that a sexually charged learning environment likely would confuse, disturb and distract students, thereby undermining the quality of education in the state." (Citations omitted; internal quotation marks omitted.) Id., 507–508.

Guided by these principles, we turn to the specifics of the defendant's arguments on appeal. He contends that numerous circumstances exist in which conduct that does not support the goal of protecting students is criminalized by § 53a-71 (a) (8). He then lists hypothetical examples to support this supposition, including situations involving a thirty-two year old kindergarten teacher engaged in a consensual sexual relationship with a thirty-four year old night student in a local high school, an eighteen year old administrative assistant for a board of education engaged in a consensual relationship with an eighteen year old high school student, a twenty-one year old college student employed on a part-time basis as a paraprofessional at an elementary school engaged in a consensual sexual relationship with his fiancé, who is an eighteen year old high school student, and an eighteen year old basketball coach who is engaged in a sexual relationship with an eighteen year old student who attends a different school in the same school district.

For purposes of the present analysis, we assume that

a right to sexual privacy[24] exists under the federal constitution. See, e.g., *State* v. *Stephens*, 301 Conn. 791, 798–99, 22 A.3d 1262 (2011) (United States Supreme Court has stated repeatedly "that overbreadth analysis is appropriate only when first amendment rights are implicated," and Connecticut courts have followed that principle); but see *URI Student Senate* v. *Narragansett*, 631 F.3d 1, 12–13 (1st Cir. 2011) (overbreadth claim failed when plaintiffs' facial challenge to town ordinance did not implicate protections of first amendment).

Next, we proceed to our Supreme Court's directive that, "[t]o determine whether a statute reaches a substantial amount of constitutionally protected conduct, we must first interpret its language and determine the scope of its prohibitions." *State* v. *Linares*, 232 Conn. 345, 365, 655 A.2d 737 (1995). Section 53a-71 (a) (8) prohibits a school employee, as that term is defined in § 53a-65 (13), from engaging in sexual intercourse, as that term is defined in § 53a-65 (2), with another person who is enrolled in a school in which the employee works or another school under the jurisdiction of the local or regional board of education. The express terms of the statute, therefore, limit its applicability to situations in which the actor and the other person are employed by, and enrolled in, respectively, the same school or a school within the jurisdiction of the local or regional board of education that employs the actor. See id., 375 (locational element limited "statute's restrictive effect on protected speech").

Mindful of this textual limitation regarding the scope of § 53a-71 (a) (8), we next consider whether it "reaches a substantial amount of constitutionally protected conduct even though [the defendant] personally did not engage in such conduct." (Internal quotation marks omitted.) *State* v. *Cook*, supra, 287 Conn. 245. In doing so, we are guided by the following observations from the United States Supreme Court: "*The concept of substantial overbreadth is not readily reduced to an exact definition. It is clear, however, that the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge.* On the contrary, the requirement of substantial overbreadth stems from the underlying justification for the overbreadth exception itself—the interest in preventing an invalid statute from inhibiting the speech of third parties who are not before the [c]ourt. The requirement of substantial overbreadth is directly derived from the purpose and nature of the doctrine. While a sweeping statute, or one incapable of limitation, has the potential to repeatedly chill the exercise of expressive activity by many individuals, the extent of deterrence of protected speech can be expected to decrease with the declining reach of the regulation. . . . In short, there must be a *realistic danger* that the statute itself will *significantly compromise*

*recognized [f]irst [a]mendment protections* of parties not before the [c]ourt for it to be facially challenged on overbreadth grounds." (Citation omitted; emphasis added; footnote omitted; internal quotation marks omitted.) *Members of City Council of Los Angeles* v. *Taxpayers for Vincent*, 466 U.S. 789, 800–801, 104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984).

Stated differently, "where conduct and not merely speech is involved . . . the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." (Internal quotation marks omitted.) *State* v. *Snyder*, supra, 49 Conn. App. 624. Moreover, "[t]he overbreadth claimant bears the burden of demonstrating, from the text of [the law] and from *actual fact*, that substantial overbreadth exists." (Emphasis added; internal quotation marks omitted.) *Virginia* v. *Hicks*, supra, 539 U.S. 122; see also *United States* v. *Hansen*, supra, 599 U.S. 784 (to succeed on claim, defendant must show that overbreadth is substantial relative to statute's plainly legitimate sweep); *State* v. *Culmo*, 43 Conn. Supp. 46, 73, 642 A.2d 90 (1993) ("[t]he task of demonstrating that a statute will significantly compromise recognized first amendment rights of parties not before the court, thus triggering facial overbreadth analysis, is on the defendant").

The analysis conducted by the Texas Court of Appeals in *In re Shaw*, 204 S.W.3d 9 (Tex. App. 2006), is instructive to our resolution of the overbreadth claim in the present case. In *In re Shaw*, the petitioner was charged with violating Texas Penal Code Ann. § 21.12 (Vernon Supp. 2006), which prohibits an employee of a public or private secondary school from engaging in sexual contact with a person enrolled in that public or private secondary school. Id., 13 and n.1. The petitioner filed a pretrial motion for a writ of habeas corpus on the ground that the statute was, inter alia, unconstitutionally overbroad. Id., 13–14. In rejecting this claim, the Texas Court of Appeals explained: "[The petitioner] imagines a number of circumstances involving sexual conduct between consenting adults where she alleges the statute would be applied unconstitutionally. However, we cannot say the statute is impermissibly broad when judged in relation to the statute's plainly legitimate sweep, i.e., employees and students in primary and secondary schools when the vast majority of such students are undoubtedly not adults. The record before us contains no data about what percentage of secondary school students affected by this statute are adults. Thus, even if this statute could be said to infringe on fundamental [f]irst [a]mendment rights of those students and employees who are of age, there is no evidence before us indicating [that the statute] reaches a substantial amount of constitutionally protected conduct. . . . Accordingly, we reject [the petitioner's] contention that [the statute] violates the [f]irst [a]mendment by being

overly broad." (Citation omitted; internal quotation marks omitted.) Id., 15.

In the present case, the defendant has failed to meet his burden of demonstrating that the constitutional rights of individuals are substantially burdened in relation to the plainly legitimate sweep of § 53a-71 (a) (8). See *United States* v. *Thompson*, 896 F.3d 155, 166–67 (2d Cir. 2018), cert. denied,    U.S.   , 139 S. Ct. 2715, 204 L. Ed. 2d 1113 (2019). As noted previously, the state has a legitimate interest in promoting a safe and healthy school environment for elementary and secondary school students by prohibiting teachers or other school employees from using a position of authority to pursue a sexual relationship with students enrolled in the educational system in which they are employed and misusing their access to students as a conduit for sexual activity. *State* v. *McKenzie-Adams*, supra, 281 Conn. 507–508. Absent from the record in the present case is any evidence to support the defendant's speculation regarding a substantial number of relationships that exist outside of the statute's legitimate scope. See *United States* v. *Thompson*, supra, 167–68; see also *New York State Club Assn., Inc.* v. *City of New York*, 487 U.S. 1, 14, 108 S. Ct. 2225, 101 L. Ed. 2d 1 (1988). The defendant did not make any showing that there are real individuals who fall into the hypothetical situations set forth in his second motion to dismiss or specify whose relationships have been chilled by the allegedly overbroad statute, and his speculation about the impact of the statute on those hypothetical relationships is insufficient to demonstrate its overbreadth. See *United States* v. *Stevens*, 559 U.S. 460, 485, 130 S. Ct. 1577, 176 L. Ed. 2d 435 (2010) (Alito, J., dissenting) (court determining whether statute's overbreadth is substantial must "consider . . . statute's application to real-world conduct, not fanciful hypotheticals"); *United States* v. *Ackell*, 907 F.3d 67, 77 (1st Cir. 2018) ("in the absence of veridical examples, [court was] not inclined to rely on hypotheticals" to invalidate statute on overbreadth grounds), cert. denied,    U.S.   , 139 S. Ct. 2012, 204 L. Ed. 2d 220 (2019); *United States* v. *Sayer*, 748 F.3d 425, 435–36 (1st Cir. 2014) (defendant did not establish that statute was substantially overbroad when he presented one factual example of statute's unconstitutional application along with list of hypotheticals); *United States* v. *Morison*, 844 F.2d 1057, 1084 (4th Cir.) ("[t]he [United States] Supreme Court has cautioned that to reverse a conviction on the basis of other purely hypothetical applications of a statute, the overbreadth must not only be real, but substantial as well" (internal quotation marks omitted)), cert. denied, 488 U.S. 908, 109 S. Ct. 259, 102 L. Ed. 2d 247 (1988).

We conclude that the defendant has not shown substantial overbreadth from the text of the law or from actual fact. See *Regan* v. *Time, Inc.*, 468 U.S. 641, 650, 104 S. Ct. 3262, 82 L. Ed. 2d 487 (1984) ("an overbreadth

challenge can be raised on behalf of others only when the statute is substantially overbroad, i.e., when the statute is unconstitutional in a substantial portion of cases to which it applies"). It was the defendant's burden to demonstrate a "realistic danger that the statute itself will significantly compromise recognized [f]irst [a]mendment protections of parties not before the [c]ourt . . . ." *Members of City Council of Los Angeles* v. *Taxpayers for Vincent*, supra, 466 U.S. 801. To meet that burden, the defendant had to present something more than his examples of hypothetical people involved in hypothetical situations, all of which involved scenarios with adults. The record before us contains no information or data concerning the percentage of adult students who are affected by the statute in relation to its legitimate sweep of protecting school students, the vast majority of whom likely are not adults. See *In re Shaw*, supra, 204 S.W.3d 15. Accordingly, the present case is not one in which the " 'strong medicine' " of the overbreadth doctrine should be employed. *New York* v. *Ferber*, 458 U.S. 747, 769, 102 S. Ct. 3348, 73 L. Ed. 2d 1113 (1982); see id., 773 (because legitimate reach of state statute dwarfed its arguably impermissible applications, statute was not substantially overbroad). As a result, we conclude that the defendant's overbreadth claim fails and, therefore, that the court properly denied the defendant's second motion to dismiss.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 54-94a provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law provided a trial court has determined that a ruling on such motion to suppress or motion to dismiss would be dispositive of the case. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

[2] General Statutes § 53a-71 (a) provides in relevant part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and . . . (8) the actor is a school employee and such other person is a student enrolled in a school in which the actor works or a school under the jurisdiction of the local or regional board of education which employs the actor . . . ."

[3] In accordance with our policy of protecting the privacy interests of the victims of sexual assault, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[4] General Statutes § 53a-71 (a) provides in relevant part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and . . . (9) the actor is a coach in an athletic activity or a person who provides intensive, ongoing instruction and such other person is a recipient of coaching or instruction from the actor and (A) is a secondary school student and receives such coaching or instruction in a secondary school setting . . . ."

[5] The court stayed execution of the defendant's sentence pending this appeal.

[6] General Statutes § 53a-65 (13) provides: " 'School employee' means: (A) A teacher, substitute teacher, school administrator, school superintendent, guidance counselor, school counselor, psychologist, social worker, nurse, physician, school paraprofessional or *coach employed by a local or regional*

*board of education or a private elementary, middle or high school or working in a public or private elementary, middle or high school*; or (B) any other person who, in the performance of his or her duties, has regular contact with students and who provides services to or on behalf of students enrolled in (i) a public elementary, middle or high school, pursuant to a contract with the local or regional board of education, or (ii) a private elementary, middle or high school, pursuant to a contract with the supervisory agent of such private school." (Emphasis added.)

[7] Our Supreme Court has explained that, "[i]n this state, the initial step to commence a prosecution, when an arrest is to be made by virtue of a warrant, is the presentation of an application for a warrant, which is accompanied by an affidavit, by a prosecutorial official to a judicial authority. If the judicial authority finds that the accompanying affidavit shows probable cause to believe that an offense has been committed, and that the person complained against committed it, the judicial authority may issue an arrest warrant. General Statutes § 54-2a." *State* v. *Crawford*, 202 Conn. 443, 449, 521 A.2d 1034 (1987).

[8] The record is inconsistent as to whether this meeting occurred in May or June of 2019.

[9] "An arrest warrant requires a finding of probable cause that an offense was committed and that the defendant committed the offense." *State* v. *Smith*, 344 Conn. 229, 256, 278 A.3d 481 (2022); see also *State* v. *Brown*, 98 Conn. App. 829, 833, 912 A.2d 525 (2006) (discussing probable cause), cert. denied, 281 Conn. 920, 918 A.2d 272 (2007).

[10] Practice Book § 41-8 provides in relevant part: "The following defenses or objections, if capable of determination without a trial of the general issue, shall, if made prior to trial, be raised by a motion to dismiss the information . . . (2) Defects in the information including failure to charge an offense . . . ."

[11] General Statutes 54-56 provides: "All courts having jurisdiction of criminal cases shall at all times have jurisdiction and control over informations and criminal cases pending therein and may, at any time, upon motion by the defendant, dismiss any information and order such defendant discharged if, in the opinion of the court, there is not sufficient evidence or cause to justify the bringing or continuing of such information or the placing of the person accused therein on trial."

[12] See footnote 6 of this opinion.

[13] We conclude that the state met the standard for probable cause, despite the evidence that the girls soccer season had ended before the defendant engaged in sexual intercourse with the victim. See, e.g., *State* v. *Kaster*, 264 Wis. 2d 751, 754–55, 763, 663 N.W.2d 390 (App.) (defendant coach for boys and girls swim teams at high school was charged with sexual assault stemming from contact with student four months after girls swimming season ended and one month after boys swimming season ended; state's evidence that, despite conclusion of his coaching duties, defendant had out of season contact with athletic director for planning, scheduling, budgeting, and evaluation purposes, and coordinated open swims and fundraising for upcoming season, was sufficient for jury to conclude that defendant provided services to school at time of criminal conduct), review denied, 265 Wis. 2d 418, 668 N.W.2d 558 (2003).

[14] The defendant also filed his second motion to dismiss pursuant to article first, §§ 8, 9 and 10, of the Connecticut constitution. On appeal, he has not argued or briefed any claim relating to the state constitution. Accordingly, we deem any such claim abandoned. See *State* v. *Stephenson*, 207 Conn. App. 154, 187 n.14, 263 A.3d 101 (2021), cert. denied, 342 Conn. 912, 272 A.3d 198 (2022); see generally *Ramos* v. *Vernon*, 254 Conn. 799, 815, 761 A.2d 705 (2000) (our Supreme Court repeatedly has apprised litigants that claim made under state constitution will not be considered and will be deemed abandoned in absence of separate briefing and analysis).

[15] The defendant identified the following as examples to support the overbreadth argument in his second motion to dismiss:

"1. A thirty-two year old kindergarten teacher who has a consensual relationship with a thirty-four year old (whom, unbeknownst to her) is a night student at a local high school, would be liable under [§] 53a-71 (a) (8);

"2. An eighteen year old administrative secretary at the local or region[al] board of education who has a consensual relationship with an eighteen year old (whom, unbeknownst to her) has recently moved into the school district and become a student at a local high school, would be liable under [§] 53a-71 (a) (8);

"3. A twenty-one year old graduate student employed part-time as a paraprofessional at an elementary school who has a consensual relationship

with his fiancé, an eighteen year old senior enrolled in a local high school, would be liable under [§] 53a-71 (a) (8);

"4. An eighteen year old assistant basketball coach at one high school who has a consensual relationship with an eighteen year old senior at another high school within the same school district would be liable under [§] 53a-71 (a) (8);

"5. A nineteen year old substitute teacher at an elementary school who has a consensual relationship with an eighteen year old senior at the local high school would be liable under [§] 53a-71 (a) (8);

"6. A high school student, employed in the cafeteria at his own high school, who has . . . a consensual relationship with an eighteen year old classmate at the same high school would be liable under [§] 53a-71 (a) (8)."

[16] "A statute . . . [that] forbids or requires conduct in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process. . . . Laws must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly. . . . A statute is not void for vagueness unless it clearly and unequivocally is unconstitutional, making every presumption in favor of its validity. . . . To demonstrate that [a statute] is unconstitutionally vague as applied to [him], the [defendant] therefore must . . . demonstrate beyond a reasonable doubt that [he] had inadequate notice of what was prohibited or that [he was] the victim of arbitrary and discriminatory enforcement. . . . [T]he void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute . . . and the guarantee against standardless law enforcement. . . . If the meaning of a statute can be fairly ascertained a statute will not be void for vagueness since [m]any statutes will have some inherent vagueness, for [i]n most English words and phrases there lurk uncertainties. . . . References to judicial opinions involving the statute, the common law, legal dictionaries, or treatises may be necessary to ascertain a statute's meaning to determine if it gives fair warning. . . . Thus, even [a] facially vague law may . . . comport with due process if prior judicial decisions have provided the necessary fair warning and ascertainable enforcement standards." (Internal quotation marks omitted.) *State* v. *Ares*, 345 Conn. 290, 303–304, 284 A.3d 967 (2022); see also *State* v. *Charles L.*, 217 Conn. App. 380, 395–96, 288 A.3d 664, cert. denied, 346 Conn. 920, 291 A.3d 607 (2023).

[17] At the plea hearing, the following colloquy occurred between the court and the defendant:

"The Court: Now, in this case you're pleading what is known as nolo contendere. Although you're pleading guilty you don't admit some or all of the factual claims or you don't acknowledge that the state has the legal authority to prosecute you. Do you understand that?

"The Defendant: Yes.

"The Court: So, your counsel will be taking an appeal. If you're successful in the appeal, the charges must be dismissed. If you're not successful, you are subject to the terms of this plea agreement. Do you understand that?

"The Defendant: Yes.

"The Court: Once I accept your plea, you can't withdraw it except for good reason and with court permission. Do you understand that?

"The Defendant: Yes."

[18] We note "that [o]ur case law and rules of practice generally limit [an appellate] court's review to issues that are distinctly raised at trial. . . . [O]nly in [the] most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised *and decided* in the trial court. . . . The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address the claim— would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party. . . . [T]he determination of whether a claim has been properly preserved will depend on a careful review of the record to ascertain whether the claim on appeal was articulated below with sufficient clarity to place the trial court [and the opposing party] on reasonable notice of that very same claim." (Citations omitted; emphasis added; internal quotation marks omitted.) *Budlong & Budlong, LLC* v. *Zakko*, 213 Conn. App. 697, 714–15, 278 A.3d 1122 (2022). Notably, however, the state does not rely on this general rule in arguing that this court should not review the defendant's claim. Instead, the state's argument concerning reviewability centers on the issue of whether the defendant's claim falls within the parameters of § 54-94a. Our analysis, therefore, relates to the argument raised by the state on appeal. We note, however, that, for the reasons set forth in this opinion, the fairness and notice issues underlying this general rule are not present in this case.

[19] At the December 2, 2021 proceeding before the court at which the defendant entered his plea of nolo contendere, the state indicated to the court that it had "no objection to the court making a finding that [its rulings denying both motions to dismiss] would be dispositive of the . . . case." In light of that concession, the state cannot now assert on appeal that the trial court could not be said to have determined that its ruling on the second motion to dismiss would be dispositive of the case. In making that assertion, the state attempts to parse the court's determination that its ruling is dispositive of the case with respect to particular issues, namely, the overbreadth one. The court in the present case, however, did not make an issue-specific ruling; it merely determined, as required by § 54-94a, that its rulings denying both motions to dismiss were dispositive of the case. For that reason, we conclude that the state's reliance on *State* v. *Paradis*, 91 Conn. App. 595, 881 A.2d 530 (2005), is misplaced.

In *Paradis*, this court had remanded the case to the trial court for a determination of whether its ruling denying the defendant's motion to suppress was dispositive of the case. Id., 600. The trial court subsequently determined that its ruling denying the motion to suppress was dispositive of the case, subject to an articulation it provided, in which it specifically stated that several issues raised by the defendant were not dispositive and that the sole dispositive issue related to the search of a garage. Id., 600–601. Under those circumstances, this court limited its review on appeal to the single dispositive issue found by the trial court. Id., 603. In contrast, in the present case, the trial court determined that its *ruling* denying the second motion to dismiss was dispositive. Moreover, the plea form contains a notation that the plea was conditioned on the defendant's appeal from the ruling on his motion to dismiss based on "overbreadth," and the court signed the form just below that notation, indicating that its ruling on the motion to dismiss would be dispositive of the case. See *State* v. *Munoz*, 104 Conn. App. 85, 92–93, 932 A.2d 443 (2007) (state, which stipulated at trial that trial court's ruling on motion to suppress was dispositive of case, was estopped from asserting otherwise or that motion to suppress did not fit within parameters of § 54-94a). Accordingly, the state's claim is unavailing.

[20] "A nolo contendere plea has the same effect as a guilty plea, but a nolo contendere plea cannot be used against the defendant as an admission in a subsequent criminal or civil case." (Internal quotation marks omitted.) *State* v. *Dayton*, 176 Conn. App. 858, 869 n.12, 171 A.3d 482 (2017); see also *State* v. *Madera*, 198 Conn. 92, 97 n.5, 503 A.2d 136 (1985).

[21] The cases cited by the state in its appellate brief in support of its argument that the defendant's claim on appeal is not reviewable are inapposite, as they address attempts by a defendant to challenge the denials of motions other than those of suppression and dismissal. See, e.g., *State* v. *Kelley*, 206 Conn. 323, 333–36, 537 A.2d 483 (1988) (Supreme Court declined to review defendant's claim regarding validity of transfer to regular criminal docket from juvenile docket following conditional plea of nolo contendere); *State* v. *Greene*, 81 Conn. App. 492, 501–502, 839 A.2d 1284 (Appellate Court declined to review defendant's claim regarding denial of motion for disclosure because it was not within ambit of § 54-94a), cert. denied, 268 Conn. 923, 848 A.2d 472 (2004); see generally *State* v. *Madera*, 198 Conn. 92, 98–99, 503 A.2d 136 (1985).

[22] In light of our determination that the defendant's overbreadth claim is reviewable, we need not address the defendant's argument, in the alternative, that he is entitled to have his claim reviewed pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 780–81, 120 A.3d 1188 (2015).

[23] "The scope of our overbreadth doctrine does not extend to all manners of expressive activity. For example, our overbreadth doctrine does not apply to commercial speech. See *State* v. *Leary*, 217 Conn. 404, 418, 587 A.2d 85 (1991)." *Ramos* v. *Vernon*, 254 Conn. 799, 849 n.3, 761 A.2d 705 (2000) (*Sullivan, J.*, concurring).

[24] See *State* v. *McKenzie-Adams*, supra, 281 Conn. 506; see also *Roberts* v. *United States Jaycees*, 468 U.S. 609, 617–20, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984).